# 16-3932

## In the
## United States Court of Appeals
### For the Sixth Circuit



EUGENE KLINE, JON SHAYNE JONES, DIANA L. HUGHES, GEORGE ROSS, CAROL ROSS, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WELLS FARGO, HOMEQ SERVICING CORPORATION, LERNER SAMPSON & ROTHFUSS, BARCLAYS CAPITAL REAL ESTATE, INCORPORATED and REIMER, ARNOVITZ, CHERNEK & JEFFREY CO., fka Reimer, Lorber & Arnovitz Company, LPA,

*Defendants-Appellees,*

- and -

HEARTLAND HOME FINANCE, INC., WMC MORTGAGE CORPORATION, AMERIQUEST MORTGAGE COMPANY, CHASE HOME FINANCE, LLC, FLAGSTAR BANK, FSB and COUNTRYWIDE HOME LOANS, INC.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO AT DAYTON

## BRIEF FOR PLAINTIFFS-APPELLANTS

PAUL STUART GROBMAN, ESQ.
*Attorney for Plaintiffs-Appellants*
555 Fifth Avenue, 17th Floor
New York, New York 10017
(212) 983-5880

## TABLE OF CONTENTS                                        Page

TABLE OF AUTHORITIES ……………………………………....…  i

STATEMENT OF JURISDICTION ……………….....……………….  1

ISSUES PRESENTED ……………………………………………….  1

PRELIMINARY STATEMENT.…………………………………….....  1

BACKGROUND …………………………………………………….  4

    A.  The 2005 And 2007 Foreclosures Suits ………………………..  4

    B.  Initiation of This Action And Discovery ……………………….  6

    C.  The February 2015 Motion To Amend The Complaint ………..  8

    D.  The February 2015 Depositions ………………………………..  9

    E.  Belated Discovery Produced By Defendants After the February
        Depositions …………………………………………………...  11

    F.  Defendants Move For Summary Judgment ……………………  13

    G.  Appellant's Attempts To Revise The Scheduling Order ……...  14

    H.   The June 2015 Depositions ……………………………………  16

    I.   Belated Disclosure Produced By Defendants After the June
        Depositions …………………………………………………...  18

    J.  The Court Strikes The Class Claims From The Complaint …….  19

    K.  New Representations By The Corporate Defendants ………....  21

    L. Evidence That The Defendants' Escrow Balance
        Representations Were False ……………………………………  23

1

M.  The Grant Of Summary Judgment And Denial of Leave To
Amend ………………………………………...………..     25

    i.  Leave To Amend …………………………………….     28

N.  Appellant's Rule 60 Motion …………………………….     28

    1.  Denial of the Motion For Reconsideration ……………..     29

    2.  Denial of the Motion to Amend ………………………….     31

    3.  Denial Of the Rule 60 Motion …………………………….     31

SUMMARY OF ARGUMENT ……………………………………..     33

STANDARD OF REVIEW ……………………………………….     34

ARGUMENT …………………………………………….………..     35

POINT I - THE COURT COMMITTED ERROR IN GRANTING
        SUMMARY JUDGMENT ON APPELLANT'S CLAIMS …     35

    1. THE COURT ERRED IN FINDING THAT UNDISPUTED
EVIDENCE DEMONSTRATED THAT THE DEFENDANTS
REFUNDED THE IMPROPER POST-ACCELERATION LATE
FEE ……………………………………………………….     35

    2. THE COURT ERRED IN FINDING THAT UNDISPUTED
EVIDENCE DEMONSTRATED THAT APPELLANT WAS
NOT CHARGED FOR ANY OF REIMER'S ATTORNEY'S
FEES ……………………………………………………..     42

    3. THE COURT ERRED IN GRANTING SUMMARY
JUDGMENT ON THE CLAIMS ARISING FROM THE
LEGAL FEES AND EXPENSES COLLECTED ON THE
SECOND MORTGAGE ………………………………………..     46

        A.  The Court Erred In Finding That Lerner Sampson's Legal
Fees Were Refunded …………………………………..     46

B.  The Court Erred In Finding That The Collection Of Legal Fees Associated With Wells Fargo Suing Itself Was Proper …………………………………………………….  48

C.  The Court Erred In Finding That The Fees Collected On Behalf Of Outsourcer 3 Arch Trustee Were Proper …….  50

4. THE COURT COMMITED ERROR IN REFUSING TO CONSIDER THE CLAIMS ARISING FROM THE 2005 FORECLOSURE …………………………………………………..  52

POINT II - THE COURT COMMITTED ERROR IN SUMMARILY FINDING THERE WAS NO FRAUD, MISREPRESENTATION OR OTHER MISCONDUCT UNDER RULE 60 ………………………………………………  55

A.  Defendants' Misconduct And Misrepresentations In Discovery …………………………………………….….  56

B.  Defendants' Misrepresentations To This Court **…………**  58

1. Filing Misleading Evidence, And False Representations About Attorneys Fees And Past-Due Interest On The First Mortgage …………..………….  58

C.  Evidence of Fraud On The Court ………………………..  61

1.  Submitting Misleading Evidence ……………………  62

2.  Making False Representations ………………………  63

POINT III - THE COURT ERRED IN STRIKING APPELLANT'S CLASS ALLEGATIONS ……………………………………  65

POINT IV - THE COURT COMMITTED ERROR IN DENYING PLAINTIFF'S MOTION TO AMEND ……………………..  70

CONCLUSION …………………………………………………  73

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

ABF Freight v. NLRB, 510 U.S. 317 (1994) ……………………………          58

Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425 (6th Cir. 1996) …          56

Allianz Global Risks Insurance Co. v. Kutzler Express, Inc., 2016 U.S.
Dist. Lexis 144847 (E.D. Wis. 2016) ……………………………………          40

Bank Leumi Israel v. Lee, 928 F.2d 232 (7th Cir. 1991) ………………..          37, 47

Becherer v. Merrill Lynch, 193 F.3d 415 (6th Cir. 1999) ………………          70

Bledsoe v. Community Health Sys. Inc., 501 F.3d 493 (6th Cir. 2007) ..          55, 71

Bobo v. UPS, Inc., 665 F.3d 741 (6th Cir. 2012) ………………………..          67

Branch Banking and Trust Co. v. Deutz Allis Corp, 120 F.R.D. 655
(E.D.N.C. 1988) …………………………………………………………          40

Brook Village North Assoc. v. General Elec. Co., 686 F.2d 66 (1st
Cir.1982) ………………………………………………………………..          41

Carbon County School Dist. No. 2 v. Wyoming State Hosp., 680 P. 2d
773 (Wyo. 1984) ………………………………………………………...          49

Chadd v. Delavan Industries, Inc., No. 86-74241, 1987 U.S. Dist.
LEXIS 15758 (E.D. Mich. May 19, 1987) …………………………...          49

Cruden v. Bank of N.Y., 957 F.2d 961 (2d Cir. 1992) …………………          49

Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir.  1993) …………………          62

DZ Bank AG v. Connect Insurance Agency, Inc., 2016 U.S. Dist. Lexis
18614, (W..D. Wash. 2016) ……………………………………………..          48

**Cases**          **Page**

Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., 804 F.2d 787    71
(2nd Cir.1986) ……………………………………………………...

Federal Home Loan Mortgage Corp. v. Schwartzwald, 134 Ohio St.3d    54
13, 2012-Ohio-5017, ¶ 41 (2012) ……………………………………….

FDIC v. Prusia, 18 F.3d 637 (8th Cir. 1994) …………………………….    40

Garcia v. Berkshire Life Ins. Co. of America, 569 F.3d 1174 (10th Cir.    60
2009) ………………………………………………………………….

Globe & Rutgers Fire Ins. Co. v. Hines, 273 F. 774 (2d Cir.1921) ……    49

Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis 27089 (6th Cir. 2001)    40, 72

Hickman v. Taylor, 67 S.Ct. 385 U.S. 495 (1947) ……………………...    3

Hofner v. Bradshaw, 622 F.3d 488 (6th Cir. 2010) ……………………...    44

In re Ferro Corp. Derivative Litig., 511 F.3d 611 (6th Cir. 2008) …….    34

Janikowski v. Bendix, 823 F.2d 945 (6th Cir. 1987) ……………………    71

Johnson v. Ventra Group, Inc., 1997 U.S. App. Lexis 21714, *8 (6th Cir.    72
1997) …………………………………………………………………….

Jordan v. Paccar Inc., 1996 U.S. App. Lexis 25358, (6th Cir. 1996) ……    56, 65

Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147 (6th Cir. 1997) …    41

Lopez v. Citizens Auto Fin., 2009 Ohio 1082, ¶13 (8th DCA 2009) ……    38

Loudakis v. Loudakis,1993 Ohio App. Lexis 2465 (May 10, 1993) ……    38

Lujan v. National Wildlife Federation, 497 U.S. 871 (1989) …………..    66

Mazzei v. The Money Store, 288 F.R.D. 45 (S.D.N.Y. 2012) ………….    36

**Cases**                                                                          **Page**

Mendoza v. Champion Int'l Corp., 340 F.3d 1200 (11th Cir.
2003) ………………………………………………………….          70

Miller v. Am. Heavy Lift Shipping, 231 F.3d 242 (6th Cir. 2000) ………          55

Morris v. Ylst, 447 F.3d 735 (9th Cir. 2006) ……………………………          60

Mulbah v. Detroit Bd. Of Educ., 261 F.3d 586 (6th Cir. 2001) …………          69

Ohio Dept. of Human Resources v. Ohio Dept. of Trans., 78 Ohio
App.3d 658 (10th App. Dist. 1992) …………………………………...          49

Okros v. Iafrate Const. Co., 298 Fed. Appx. 419 (6th Cir. 2008) ……….          61, 64

Riley v. Kurtz, 194 F.3d 1313 (6th Cir. 1999) ………………………….          41

Resolution Trust Corp. v. North Bridge Ass., Inc., 22 F.32 1198 (1st
Cir. 1994) ………………………………………………………..          67

Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 217 F.R.D. 296 (D.
Conn. 2002) ……………………………………………………..          40

SGIC Strategic Global Investment Capital, Inc. v. Burger King Europe
GMBH, 839 F.32 422 (5th Cir. 2016)  …………………………………          71

Slorp v. Lerner Sampson & Rothfuss, et al., 587 Fed. Appx. 249 (6th
Cir. 2014) ………………………………………………………..          72

Tarleton v. Meharry Medical College, 717 F.2d 1523 (6th Cir. 1983) …          67

Tolan v. Cotton, 134 S.Ct. 1861 (2014) …………………………………          38

Trevizo v. Adams, 455 F.3d 1155 (10th Cir. 2006) …………………….          70

Tucker v. Union of Needletrades, Indust. & Textile Employees, 407
F.3d 784 (6th Cir. 2005) …………………………………………...          72

| **Cases** | **Page** |
|---|---|
| United States v. Petroff-Kline, 557 F.3d 285 (6th Cir. 2009) ………….. | 41 |
| U.S. Bank, N.A. v. Adams, 2012 Ohio 6253 (Ohio Ct. App. 2012) …… | 53 |
| U.S. v. Agurs, 427 U.S. 97 (1976) …………………………………… | 60 |
| U.S. v. Sylvester, 2015 U.S. Dist. Lexis 15275 (E.D. Mich. 2015) ……. | 38 |
| Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323 (6th Cir. 2012) | 73 |
| Wilborn v. Bank One Corp., 906 N.E.2d 396 (Ohio 2009) …………….. | 42 |
| Wu v. T.W. Wang, Inc., 420 F.3d 641 (6th Cir. 2005) …………………. | 69 |

| **Statutes** | **Page** |
|---|---|
| 15 U.S.C. §1692 ………………………………………………………… | 6 |
| 28 U.S.C. §1332(d) (CAFA) ………………………………………… | 1 |
| 28 U.S.C. §1292 ……………………………………………………… | 1 |
| FRAP 4(a)(1) …………………………………………………....…… | 1 |
| FRCP Rule 6(b) …………………………………………………… | 65, 66 |
| FRCP Rule 26 …………………………………………………….... | 15 |
| FRCP Rule 30(b)(6) ………………………………………………… | 15 |
| FRCP Rule 36(b) ………………………………………………….. | 41 |
| FRCP Rule 8(c) ……………………….…………………………….. | 47 |
| FRCP Rule 41…………………………………………………………… | 34, 65, 69 |
| FRCP Rule 56(d) ………………………………………………….. | 20, 67 |
| FRCP Rule 60(b)(3) ………………………………………………… | 56, 61, 65 |
| 7B Wright, Miller, & Kane, Federal Practice and Procedure § 1785, at 89-90 (2d ed. 1986) ……………………………………………….. | 70 |

## STATEMENT OF JURISDICTION

The court below had federal question jurisdiction and jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d). This Court has jurisdiction pursuant to 28 U.S.C. §1292(a)(1) since Appellant appeals from the Denial of his Motion for Reconsideration and/or Relief of a decision granting judgment on all his claims filed on July 18, 2016. The Notice of Appeal was filed on August 12, 2016 in accordance with F.R.A.P. 4(a)(1).

## ISSUES PRESENTED

1. Did the court below commit error in granting summary judgment to the Defendants?

2. Did the court below commit error in denying Appellant's Motion for Relief under Rule 60?

3. Did the court below commit error in striking Appellant's class allegations from the Complaint with prejudice?

4. Did the court below commit error in denying Appellant's motion for leave to amend the complaint?

## PRELIMINARY STATEMENT

Plaintiff –Appellant Eugene Kline submits this Brief on appeal of the decisions of Judge Walter Rice (i) granting Wells Fargo Bank, N.A. ("Wells Fargo"), Barclays Capital Real Estate d/b/a HomEq ("HomEq"), Mortgage Electronic Registration Systems ("MERS"), Reimer Lorber & Arnovitz ("Reimer") and Lerner Sampson & Rothfuss's ("Lerner") motions for summary judgment on

1

Appellant's claims under the FDCPA and Ohio state law, (ii) striking the class certification allegations from Appellant's complaint; (iii) denying Mr. Kline's motion for relief from judgment under Rule 60 on the basis of fraud, misrepresentation, and misconduct; and (iv) denying Kline's motion to amend the complaint to add claims based on new evidence which Defendants belatedly produced.

Appellant's claims in this action involve allegations that the Defendants charged him for the following improper fees and expenses:

i.   legal fees collected in connection with the pay off of Mr. Kline's first mortgage in November 2008

ii.  legal fees and related expenses collected in connection with the pay off of Mr. Kline's second mortgage in November 2008;

iii. late fees after acceleration collected in both 2006 and November 2008.

iv.  legal fees and expenses collected by the Corporate Defendants and Reimer in the 2005 Foreclosure action.

In dismissing these claims, the lower court ignored abundant objective evidence in the record demonstrating that the Appellees exacted thousands of dollars in improper legal fees, expenses, late fees and interest from Mr. Kline.

Moreover, the evidence demonstrates that when Appellant sought to prove these allegations in this litigation, Wells Fargo, HomEq and MERS (hereinafter the "Corporate Defendants") concealed critical evidence for the first seven years of this litigation, repeatedly filed inaccurate documents, and made fundamental

misrepresentations to both Appellant and the court below.  Regrettably, the Corporate Defendants were aided in this pursuit by the reckless conduct of their counsel.

Appellant does not make these accusations lightly, but there is abundant evidence in the record demonstrating improper litigation conduct, contradicted only by the self-serving denials of Defendants' witnesses.  In spite of this, the court below granted summary judgment on all of Appellant's claims, and held that Defendants conduct in this litigation did not warrant examination.  In fact -- though acknowledging that a critical escrow document produced by Barclays and repeatedly relied upon by the Corporate Defendants "was inaccurate", (Doc. #513, PageID#9394) --  the court's only opprobrium was directed toward Appellant's counsel, who the court said "violated his FRCP 11(b) obligations" by making "unsubstantiated allegations of fraud."  (Doc. #513, PageID#9398, n.9)

As shown below, the evidence demonstrates that Defendants charged Appellant for improper attorney's fees and expenses in two state foreclosures, and then engaged in multiple instances of misconduct in this litigation in an effort to frustrate a decision on the merits. Regrettably, the lower court allowed Defendants to profit from their misconduct by issuing a series of one-sided rulings in their favor, allowing this lawsuit to "become[] more of a battle of deception than a search for truth."  Hickman v. Taylor, 67 S.Ct. 385, 329 U.S. 495 (1947)

## BACKGROUND

In June 2004, Eugene Kline entered into two loan transactions with WMC Mortgage Corporation, borrowing $160,000.00 on the First Loan, and $30,000 on the Second Loan.  MERS was the nominee for WMC on both the First and Second Loans.   Unbeknownst to Mr. Kline, sometime thereafter, his loans were sold to an entity known as the "Merrill Lynch Mortgage Asset-Backed Certificate Series 2004-WM5 Trust."   Wells Fargo was the Trustee of the Trust, and HomEq was the servicer.

### A.  The 2005 And 2007 Foreclosures Suits

In 2005, Mr. Kline fell behind on his payments, and MERS instituted a foreclosure suit in Ohio state court.   MERS was represented by Reimer.  In the complaint, MERS represented that it was the "owner" and "holder" of the Note and Mortgage.  (Doc. #465-5, PageID#7979)   Thereafter, MERS obtained a judgment of foreclosure and, with a foreclosure sale looming, Appellant paid the amounts demanded by MERS to reinstate the First Loan, which included legal fees, late fees and expenses associated with the foreclosure. (Doc. #465-6, PageID#7984-85)

In 2007, Mr. Kline again fell behind on his mortgage.   On March 16, 2007, Reimer commenced a foreclosure action against Kline on behalf of "Wells Fargo Bank, N.A., as Trustee".   (Doc. #465, PageID#7979)   In the Complaint, Wells Fargo also sued "Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation" as the purported holder of the second mortgage on

4

Kline's property. Lerner Sampson filed an answer on behalf of MERS. (Doc. #465-9, PageID#7995)

Thereafter, Wells Fargo obtained a judgment of foreclosure, forcing Appellant to sell his house to pay off the First and Second Loans. By letter dated November 15, 2007, Wells Fargo and Reimer advised Kline of the amount necessary to pay off the First Loan. (Doc. #465-10, PageID#7999)  In a subsequent letter, Wells Fargo and Reimer advised Kline that no attorneys fees would be collected from him because "attorney's fees cannot be collected in a payoff." (Doc. #497, PageID#8987)  By letter dated November 14, 2007, Lerner Sampson, MERS and HomEq provided a payoff quote on the Second Loan. (Doc. #465-11, PageID#8002) After Kline paid the amounts quoted, he was advised that the First and Second loans were paid-in-full.

In December 2007, Appellant asked for an itemization of the amounts collected from him by the Appellees.  By letter dated February 7, 2008, Wells Fargo, HomEq and Reimer provided an itemization of the amounts collected on the First Loan. (Doc. #465-13, PageID#8006)  Attachments to the letter indicated that Kline was charged for various expenses but not attorney's fees.  Wells Fargo and Reimer also attached an Escrow History which represented that the last debt posted to the Escrow Account was six months before payoff, and that the escrow balance after payoff was zero. (Doc. #465-13, PageID#8007)

By letter dated February 19, 2008, Lerner, MERS and HomEq provided an
itemization of the legal fees and expenses collected on the Second Loan.  (Doc.
#465-14, PageID#8013)  In the letter, Lerner indicated that the fees collected
included $350.00 in attorney fees "incurred by my Client to protect its interest when
named as a defendant in the Lawsuit initiated by Wells Fargo Bank, N.A." (Id.)

### B.  Initiation of This Action And Discovery

In November 2008, Appellant brought this putative class action against the
Defendants, alleging claims under the Fair Debt Collection Practices Act, 15 U.S.C.
§1692 et. seq. ("the FDCPA"), breach of contract and unjust enrichment.   The
claims alleged that Kline was charged for legal fees and expenses which were
prohibited by the loan documents, prevailing industry practice, and federal and state
law.[1]

In 2012, after over a dozen motions to dismiss, discovery began.  Plaintiff
served discovery requests on the Corporate Defendants in 2012 and 2013.   None of
them responded to these requests within the time deadlines imposed by the Federal
Rules:

- MERS did not serve its written response to Appellant's discovery
  requests until March 14, 2014, more than 1 ½ years after they were due;

- HomEq did not respond until June 13, 2014, two years after they were
  due; and

---

[1] Appellant filed an Amended Complaint in April 2010. (Doc. #157)

- Wells Fargo did respond until June 13, 2014, seven months after they were due.

Moreover, the documents and interrogatory responses finally produced by the Corporate Defendants were inadequate. Mr. Kline moved to compel, and in an Order dated October 1, 2014, the court granted Appellant's motions, requiring the Corporate Defendants to provide additional discovery. (Doc. #377, PageID#5518). The Corporate Defendants did not fully comply with this Order until January 2015. (Doc. #393-3, PageID#5722-5729)

Several of the original document requests to the Corporate Defendants bear emphasis. Thus, Appellants document requests to Wells Fargo in November 2013 requested the following:

1. Any and all documents in any loan file within Wells Fargo's possession, custody or control relating to Kline's loans, including all documents relating to the transfer or assignment of Klines' loans to different owners, holders or servicers.

(Doc. #497, PageID# 9003)   In response to this request, Wells Fargo indicated it had no documents showing the transfer of the loans to different owners, holders or servicers" (PageID# 9003)

Appellant's document requests to Barclays in June 2012 requested:

1. Any and all documents in any loan file maintained by HomEq relating to any of the plaintiffs loans. …

13. The account history for each of the [] plaintiffs showing the date and description of (i) each fee and expense posted into each of the plaintiffs' accounts, (ii)

7

whether or not the fee was charged to plaintiff and (iii)
each payment made by plaintiffs.

(Doc. #497, Exh. I, PageID# 9009, 9011).  In response to these requests, HomEq

represented that "documents responsive to this request have been produced." (Id.)

In the court's Amended Scheduling Order dated February 5, 2015 (Doc. #395,

PageID#5742), the court set a March 1, 2015 deadline for the completion of

discovery and the filing of motions to amend the complaint.  (Id.) The Scheduling

Order set April 30, 2015 as the deadline for making a class certification motion.

(PageID#5744)

### C.  The February 2015 Motion To Amend The Complaint

On February 2, 2015, Mr. Kline moved for leave to amend, adding a RICO

claim, a fraud claim, and specific allegations based on the assessment of improper

fees and expenses collected from Kline in the 2005 foreclosure.  (See Doc. #393-1,

PageID#5663,5674-5678)

The Amended Complaint also pled specific allegations on another issue that

had been repeatedly raised by Appellant in previous filings with the court.

Documents produced by Defendants indicated that -- contrary to what the

Defendants had represented to Mr. Kline and the state court in the 2007 Foreclosure

action -- the First and Second Loans were actually owned by the same entity.  (See

Doc. #393-1, PageID#5683-5684, ¶¶80-84, PageID#5685-5686, ¶¶87-91)  In letters

to Appellant itemizing the attorneys fees and expenses collected from him on the

8

second loan, Lerner Sampson and the Corporate Defendants gave no indication that the $350.00 in legal fees and $225.00 in expenses collected from Mr. Kline were associated with defending against a foreclosure lawsuit *brought by itself.*[2] (Doc. #465,PageID##7999-8002)

As Mr. Kline stated in the motion, while no depositions had yet taken place, Plaintiff was moving to amend in order to comply with the proposed deadlines in the Amended Scheduling Order. (See Doc. #388, PageID#5622-5623)[3]

### D. The February 2015 Depositions

Depositions of each of the parties occurred in late February 2015. On February 25, 2015, plaintiff took the deposition of Michael Perry, HomEq's Rule 30(b)(6) witness. At the deposition, HomEq's witness acknowledged for the first time that – contrary to the representations made to Appellant -- HomEq's internal documents showed that Kline had been charged for at least one late fee for $69.12 after his loan was accelerated in 2007, and that the assessment of post-acceleration late fees was was improper. (Doc. #465-3, PageID#7964-7971) As Mr. Perry testified:

---

[2] In the same respect, Mr. Kline was charged for a $100.00 service of process fee associated with Wells Fargo – the foreclosure plaintiff in the 2007 Foreclosure Action -- serving the Complaint on the owner of the Second Loan, which *was itself.* (Doc. #465-13, PageID#8011)

[3] On March 27, 2015, the Court deferred ruling on the motion to amend, stating that "because of the unusual procedural circumstances of this particular case, the court believes that the interests of justice described by Rule 15 require it to defer a decision on amendment until the resolution of the class certification issue." (Doc. #415, PageID#6301) The court said that the plaintiff "may renew the Motion for Leave to Amend" once the decision on class certification was made. (Id.)

> Q. … [H]e was charged at least one post-acceleration late
> fee, is that -- is that correct?
> MR. RILEY: I'm going to object.
> THE WITNESS: I don't know, sir. It depends on the
> definition of charge. He was presented with an invoice.
> He paid it and then they realized an error and they
> corrected it.

(Doc. #465-3, PageID#7971)   Though acknowledging that Mr. Kline had been

charged for an improper late fee, Perry said it should have been corrected by

Barclays sending him a refund check:

> A…. He would have received an escrow check.
> Q. Of $69.12?
> A. And $0.12.
> MR. GROBMAN: To the extent that such a check exists,
> I would request that it be provided.

(Doc. #465-3, PageID#7969).   No check or any other proof of payment was ever

produced by Defendants.

HomEq's witness was also asked about certain fees which appeared on

documents recently produced by HomEq appearing to show that attorney's fees and

expenses had been added to Mr. Kline's account one week after Plaintiff's loan had

been paid in full.   HomEq testified that Kline would not have been required to pay

any post-payoff fees not listed in the Payoff Quote.  (Doc. #497, PageID# 9029,

9030)

At Reimer's deposition, the Reimer firm's representative testified that the firm

– which represented MERS in the 2005 Foreclosure Action -- was never told that

Mr. Kline's First and Second Loans had apparently been transferred from MERS to

10

Wells Fargo in 2004. In fact, Reimer acknowledged that – if the Note and mortgage were not in MERS' possession at the time -- MERS likely did not have standing to bring the 2005 foreclosure action against Mr. Kline:

> Q. … [T]o the extent that there was – this was transferred to a Wells Fargo trustee, could a foreclosure have been filed by MERS in 2005?
> MS. BROWN: Objection.
> THE WITNESS:  Could it have been?  Very honest with you, at this point I would say no.

(Doc. #497,PageID# 9033)

### E.  Belated Discovery Produced By Defendants After the February Depositions

The Amended Scheduling Order required disclosure to have been completed by March 1, 2015.

Nevertheless, on March 17, 2015, Wells Fargo emailed 61 pages of additional documents relating to Plaintiff's loans which were encompassed within Plaintiff's original document demands, and should have been produced years earlier. (Doc. #497-15, PageID#9038)

On March 26, 2015, MERS emailed 1,326 pages of additional documents to Appellants.  (Doc. #497, PageID#9040)  In addition, in an accompanying letter, MERS said it was withholding other documents on the basis of privilege.  Despite repeated requests, MERS refused to provide a privilege log identifying these documents.

On March 26, 2015, HomEq emailed 18 pages of additional documents, each

of which directly related to the legal fees and expenses charged to Mr. Kline.  (Doc. #465-15, PageID#8017-8035)   Among the documents produced by HomEq was another Escrow History for Appellant's account which disclosed transactions concealed in the prior Escrow History produced by the Defendants in this litigation. (Doc. #465-15, PageID#8017)   Thus, while the prior Escrow History indicated that Mr. Kline had no escrow balance after he paid off the loan in November 2007, the new history showed that there was a positive $412.96 "Escrow Balance" owed to Mr. Kline after Payoff, later increased to $482.08  (Doc. #465-15, PageID#8017, at 12/3/2007 and 12/5/07)   HomEq and Wells Fargo had concealed this escrow balance from Mr. Kline and the court for 7 ½ years, repeatedly filing the inaccurate Escrow History provided to Mr. Kline in February 2008 which showed that the escrow balance was zero.

Moreover, the new Escrow History also showed two post-payoff transactions which had never been previously disclosed, in which the Defendants made two so-called "Fee Adjustments" (one for $158.00 and one for $324.08) to the escrow balance to bring that amount down to zero.  (Doc. #465-15, PageID#8017, at 12/11/2007, 12/24/2007)  HomEq and Wells Fargo had also concealed these additional transactions in Mr. Kline's account from Plaintiff and the court for 7 ½ years.   Neither HomEq nor Wells Fargo ever provided any explanation for why they produced, filed and relied upon an inaccurate Escrow History in this litigation for over 7 years.

12

In a letter accompanying the belated production, attorney Russell Pope – whose law firm represented Wells Fargo, Barclays and MERS in this action – stated that the Corporate Defendants agreed to produce witnesses to be deposed about the new documents, and that an extension of the existing scheduling deadlines was warranted:

> I will consent to any reasonable extension of time you may require in order to either oppose any summary judgment motions or support your own class certification motion to the extent such an extension is necessitated by the materials being presented herewith.

(Doc. #432-3, PageID#6944)

### F.  Defendants Move For Summary Judgment

On March 27, 2015, each of the defendants moved for summary judgment. Despite producing the modified Escrow History the day before, the Corporate Defendants motion papers all attached and relied upon the inaccurate Escrow History.  (See Doc. #417-10, Exh. I, PageID#6471; Doc. #418, ,PageID#6605) Moreover, consistent with their prior representations, Defendants' papers represented that Mr. Kline was not charged any of Reimer's attorney's fees when he paid off the First Loan in November 2007. Thus, Wells Fargo stated that:

> [I]t is Defendants other than Wells Fargo who are charged with violating Ohio law [by assessing legal fees.]  Even if Wells Fargo had been named in these allegations, the disputed fee was not incurred by Reimer Lorber for filing and prosecuting the foreclosure action in regard to the first Note.

13

(Doc. #417, PageID#6395)  See also Doc. #418-1, PageID#6532 (HomEq

incorporates Wells Fargo arguments)

　　　In its papers, Reimer filed an Affidavit from Dennis Reimer which stated that:

> The Reimer firm did not seek to collect nor did it
> collect attorneys fees from plaintiff Kline, with
> respect to the payoff of the first mortgage on his
> property.  Nor were any of the Reimer firms
> attorney's fees passed on to Mr. Kline with respect to
> the payoff of the first mortgage of his property.

(Doc. #414-8, Exh. Q, PageID#6287)

## G.  Appellant's Attempts To Revise The Scheduling Order

　　　On March 31, 2015, the Court entered an Order staying all deadlines for 30

days to allow the parties to mediate.   The court advised that, in the interim, it was

"available to conduct a status conference to discuss any issues that [] arise."  (Doc.

#421, PageID#6787)   On April 10, 2015, counsel for Mr. Kline wrote to the court

requesting a status conference to discuss deadlines in the existing Scheduling Order

in light of the documents belatedly produced by the Corporate Defendants:

> Pursuant to your direction to the parties in the Court's
> March 31, 2014 Order, I write to request a status conference
> with regard to certain issues which have arisen as a result of
> additional documents recently produced by MERS,
> Barclays and Wells Fargo after the taking of defendants'
> Rule 30(b)(6) depositions in February. . . . While the Court
> may determine that the status conference should be put off
> until after the parties have engaged in mediation, plaintiff
> believes it is prudent to advise the court in advance about
> these issues. . .

Should mediation prove unsuccessful, plaintiff believes that, at a minimum, it has a right to certain additional disclosures from defendants ***before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order***.  These include: (i) reopening the Rule 30(b)(6) depositions of Wells Fargo, Barclays and MERS with regard to these newly-produced documents; and (ii) a privilege log from MERS pursuant to Rule 26 of the Federal Rules of Civil Procedure identifying  the documents that MERS is withholding on the basis of purported privileges. . .

Doc. #432-1, PageID#6937-6938 (emphasis added).   On May 7, 2015, Appellant filed a second letter with the court making the same request.   (Doc. #426, PageID#6795-6796)  In motion papers filed with the court on May 29, 2015, Appellant again stated:

[P]laintiff respectfully requests that the Court schedule a conference to discuss (i) the outstanding discovery issues set forth in these papers and plaintiff's letters to the court; and (ii) a revised Scheduling Order setting new dates for motions, responses thereto and deadlines set forth in the current Scheduling Order.

(Doc. #427, PageID#6800-6801) See also Doc. #431, PageID#6931 (same request on June 29th).

The lower court never indicated there was anything wrong with these requests.  In fact, on June 1, 2015, the court filed an order noticing a conference for June 22nd, which it cancelled and rescheduled for July 16th.   (See Docket)  On July 16th, this court cancelled the conference, saying that it was not necessary.

### H.  The June 2015 Depositions

On June 10-12, 2015, Plaintiff's counsel took additional depositions of the

Corporate Defendants relating to the documents belatedly produced in March.  At

her deposition, Jacklyn Cartmill of HomEq admitted that the previous Escrow

History produced by HomEq was misleading and inaccurate:

> Q. If the borrower is looking at [the prior Escrow History
> provided to Mr. Kline], would the borrower have any way
> of knowing that there was an escrow balance remaining . . .
> after payoff?
> A. No.
> Q. And would the borrower know that there were two
> transactions in escrow which took that balance and turned it
> into zero?
> A. They would not.
> Q Do you know whether the borrower was apprised, at any
> point before [the new Escrow Activity history] was
> produced on March 26th of 2015, that these transactions
> that we are talking about, which don't exist on [the prior
> Escrow  History], had been disclosed? . ..
> A.  I -- I don't know how the borrower would know.

 (Doc. #497,PageID#9050-9051)   Ms. Cartmill also testified that she did not know

whether making "fee adjustments" to the escrow balance after pay off were legal:

> Q.  And I'm asking you, you don't know whether
>  this was consistent with HomeEq practice?
> A.  I do not know.
> Q.  You don't know whether it was consistent with the loan
> documents?
> MR. POPE: Objection. Go ahead.
> A.       I do not know.
> Q.  And you don't know whether it was consistent with the
> law?
> MR. POPE: Objection. Go ahead.
>  A.  I don't know.

(Doc. #488, PageID#8665-8666)

Moreover, Cartmill also admitted that the recently produced documents indicated that Reimer's legal fees were added to the corporate advance owed by Mr. Kline after he fully paid off the loan, and may have been included in the fees and expenses secretly deducted from the concealed escrow balance owed to Appellant:

> Q And this was an invoice from?
> A Reimer, Lorber & Arnovitz. Sorry.
> Q Okay. And just tell me what this indicates to you? . . .
> A. Well, this information indicates it's a disbursement.
> The description says "attorney fees," and for the amount of $510.
> Q. And do you know whether this amount was added to corporate advance?
> A. By way of this entry it was. …
> Q. So was this an amount which was added to the amount that the borrower owed? Is that correct?
> A. That's correct.

((Doc. #497-19, PageID#9047-9048)   In light of the new documents, Cartmill said she could not say whether the representation by the Reimer firm and other Defendants that Mr. Kline was <u>not</u> charged for Reimer's legal fees in 2008 was accurate:

> Q. Now, in his affidavit here, Mr. Reimer says . . .  "The Reimer firm did not seek to collect, nor did it collect attorney's fees from plaintiff Kline with respect to the payoff of the first mortgage on his property. Nor were any of the Reimer firm's attorney's fees passed on to Mr. Kline with respect to the payoff of the first mortgage on his property." Now, in particular, nor were any of the Reimer firm's attorney's fees passed on to the -- Mr. Kline. Do you know whether that's an accurate statement?

A. I do not.

(Doc. #497,PageID# 9055-9056)

### I. Belated Disclosure Produced By Defendants After the June Depositions

Even after these second depositions took place in June 2015, the Defendants continued to belatedly produce additional documents which were highly relevant, and clearly encompassed within Appellant's initial discovery requests served in 2012 and 2013.  Most significantly, on June 25, 2015 – four months after the March 1st discovery deadline – Wells Fargo produced a communication from HomEq to Wells Fargo in 2005 requesting the transfer of Mr. Kline's Notes and Mortgages to HomEq for the purpose of foreclosure.  (Doc. #465-20, PageID#8061-8070) This was directly contrary to the representation by Wells Fargo in in response to Appellant's prior document requests, in which Wells Fargo said that it had **no** documents relating to the transfer of Kline's loan documents to different holders.

As discovery was four months over, Mr. Kline had no opportunity to question Wells Fargo about these documents.  Nevertheless, the documents produced on June 25, 2015 appear to conclusively demonstrate that -- contrary to the express representations made by Reimer Lorber and MERS in the foreclosure against Mr. Kline in 2005 -- MERS was **not** the owner and holder of the first note and mortgage at the time the 2005 Foreclosure was instituted.  (Doc. #465-20, PageID#8065-8066)

### J.  The Court Strikes The Class Claims From The Complaint

On August 3, 2015, the defendants filed a joint motion to strike the class

allegations from the Complaint because of plaintiff's failure to file a class

certification motion within the deadline imposed by the Scheduling Order.   In their

motion, the defendants argued that the class certification motion "was due at the

latest on May 30, 2015", and that, "[a]stonishinglingly, the plaintiff has not filed a

motion seeking an extension of his time for filing a class certification brief." (Doc.

#444, PageID#7299, 7300-7301)

On August 14, 2015, Kline filed papers in opposition to the motion to strike,

detailing the series of belated disclosures by the Corporate Defendants, their

agreement to extensions of the class certification deadlines, and Plaintiff's repeated

communications to the court asking for a conference to extend the deadlines.  (Doc.

#445, PageID#7307, 7310-7313, 7321-7323) At the end of his papers, Mr. Kline

stated:

> Plaintiff again respectfully requests an Amended
> Scheduling Order . . . providing amended deadlines
> for opposing defendants' motions for summary
> judgment, moving for class certification, identifying
> expert witnesses and amending the complaint.

(PageID#7330-7331)

On September 25, 2015, the lower court issued a decision striking the class

allegations in the Complaint with prejudice.  The court found that it would "not

consider" plaintiffs multiple requests to extend the scheduling deadlines because

19

"neither the form nor the substance of [plaintiff's] purported request [for an

extension] adequately complied with Rule 6(B)."  (Doc. #463,PageID#7891)

According to the Court, the requests were improper because "[t]he Federal Rules of

Civil Procedure are clear: any 'request for a court order must be made by motion.'"

(PageID#7864)   The court also concluded that plaintiff never "substantively ma[d]e

a request for an extension of time to file a class certification motion" before the

scheduling deadline but instead "request[ed] a status conference." (PageID#7891)

The court made the following observation about Appellant's counsel:

> The Court is all too familiar with [] bleating by Plaintiff's
> attorney about his caseload and its deleterious effect on
> his ability to represent his clients effectively….. He has
> also made innumerable mentions of the burden of
> litigating in the Southern District of New York  during
> telephone conference calls with the court when attempting
> to push deadlines into the future. To quote Joseph N.
> Welch: "Enough.  Have you no sense of decency, sir, at
> long last?"

(PageID#7874-7875)

　　　The court said that it would treat Appellant's requests for Scheduling

Deadline modifications as requests for additional discovery needed to respond to

summary judgment under FRCP Rule 56(d)(2).  (PageID#7866)   The court found

that even if Defendants' belated disclosures in March and June of 2015 "prove

useful for responding to Defendants' Motions for Summary Judgment or is

otherwise relevant to Plaintiff's claims, the desire to pursue further relevant evidence

is not a sufficient basis for allowing further discovery under Rule 56(d)(2)."

(PageID#7868)  The court also found that plaintiff was not entitled to a privilege log from MERS because Mr. Kline has given "no explanation of what 'material facts' a privilege log from MERS would provide."  (PageID#7870)

In sum, the court found that "a Motion for Class Certification should have been filed by June 9, 2015" but "Plaintiff filed no such motion, nor a motion requesting an extension of the deadline." Finding "no excusable neglect that would justify granting Plaintiff's untimely 'request' for an extension of this deadline", the court struck the class allegations from the Complaint.  (PageID#7893)

On October 16, 2015, Appellant filed his papers in opposition to summary judgment, relying on the above evidence to contend that: (i) the Defendants had improperly initiated the 2005 foreclosure by making false assertions regarding standing, and thus had no right to collect legal fees and expenses arising from that action; and (ii) that Defendants had improperly collected legal fees and post-acceleration late fees from him on both the First and Second loans in the 2007 foreclosure.

### K.  New Representations By The Corporate Defendants

On October 30, 2015, the Corporate Defendants each filed an Affidavit executed by Jacklyn Cartmill in further support of their motions for summary judgment.  (Doc. #477, PageID#8483)  According to Ms. Cartmill's Affidavit, Defendants' production of a misleading Escrow History in this litigation was ultimately irrelevant, since the legal fees and expenses charged to Mr. Kline in the

21

previously concealed Escrow History were taken from the "past-due interest" properly collected from Appellant.  Thus, Ms. Cartmill stated:

> The excess $412.96 amount which was transferred into the escrow account was then credited to clear a portion of the outstanding corporate expense advances which had previously been made in regard to the Kline loan.  This credit toward the corporate advances came out of the $412.96 in reallocated ***past-due interest***: the Plaintiff was ***not charged*** for these corporate advances [i.e., the legal fees and expenses], ***nor did he actually pay them.***

(Doc. #477, PageID#8484, ¶5 (emphasis added))  Each of the Corporate Defendants filed other documents with this court on October 30, 2015 which made the same representations.   See Doc. #477, PageID#8449-8450  (Wells Fargo states that the escrow balance came from "accrued interest" owed by Mr. Kline and "that Mr. Kline himself was never assessed those fees as part of the payoff quote, nor did he ever pay any of those fees.");  HomEq Brief, Doc. #475, PageID#8360-8361 (same representations);  MERS Br., Doc. #476, PageID#8403(same)   On November 13, 2015, HomEq, MERS and Wells Fargo filed papers which again represented that the escrow balance was a "reallocation of accrued interest", and that Kline's "mischaracterizing the escrow balance . . . as money which was somehow due to [Mr. Kline] is blatantly inaccurate."  (Doc. #481, PageID#8534)

    Ms. Cartmill's October 30th Affidavit also made representations regarding the legal fees collected from Mr. Kline on the Second Loan.  The affidavit admitted that the Corporate Defendants and Lerner Sampson collected $350.00 in legal fees for

services performed by Lerner Sampson. (Doc. #477-2, PageID#8485)   However,

Ms. Cartmill stated that she recently "discovered that a reimbursement check was

mailed to the Plaintiff on or about December 21, 2007 in the amount of $422.32"

which "included the $350.00 which had been assessed and collected from the

Plaintiff." (Doc. #477-2, PageID#8485)

The court denied Appellants' motion to strike the Cartmill Affidavit as new

evidence submitted in reply, (Doc. #478-479, PageID#8489), but gave Mr. Kline the

opportunity to present a Sur-Reply.  (Doc. #486, PageID#8635)

### L.  Evidence That The Defendants' Escrow Balance Representations Were False

On December 17, 2015, Mr. Kline submitted Sur-Reply papers. (Doc. ##487,

PageID#8641)   Mr. Kline noted that the "payment" defenses being raised by the

Defendants were never pled and – as affirmative defenses – were thus waived. (Doc.

#487, PageID#8645)

Moreover, using the Corporate Defendants' documents and the testimony of

their witnesses, Mr. Kline's Sur-Reply demonstrated that the Defendants' new

assertions about the escrow balance coming from "past-due interest" owed by Mr.

Kline were false.   Mr. Kline put forth the following evidence to demonstrate the

misrepresentations.

The November 15, 2007 Payoff Quote from Reimer stated that $176,332.28

was due on the first mortgage, including *$14,821.28* in interest -- calculated at

23

$42.22 per day – based on a payoff date of *December 9*, 2007. (Doc. #488-2, PageID#8668-8669)  Plaintiff sold his house on November 19, 2007 to pay off the amount in the Payoff Quote.

HomEq's internal documents indicate that Reimer received a check for the full amount quoted on November 27, 2007. (Doc. #488-3, PageID#8672, at 11/27/2007)  HomEq received the check on November 28th, although the funds were "posted with an effective date of 11/29/07." (Doc. #488, PageID#8671, at 11/28 and 11/29)  Thus, based on the November 15, 2007 Payoff Quote, Plaintiff's interest overpayment as of November 29th would have been at least 10 days at $42.22 per day.

According to a HomEq Transaction History, a total of $14,339.20 of interest was owed based on the date Mr. Kline made his payment, leaving an interest overpayment of **<u>$482.08</u>** which was owed to Mr. Kline. (Deducting $14,339.20 from the $14,821.28 in interest that in the Payoff Quote that Kline paid). (Doc. #488-4, PageID#8676, at 12/3/07)

That amount -- **<u>$482.08</u>** – is the same as the escrow balance owed to Mr. Kline shown in the Escrow History produced in March 2015. (Doc. #488-5, PageID#8678, at 12/5/07)  That previously concealed balance was eliminated by Wells Fargo and HomEq's deduction of two post-payoff charges -- $158.00 and $324.08 – for attorney's fees and expenses. (Doc. #488-5, PageID#8678; Doc. #488-4, PageID#8674-8675)

Thus, the Corporate Defendants own records indicated they were lying in representing that the concealed escrow balance consisted of "past-due" interest owed by Mr. Kline.   As  Defendants' records demonstrated, the Corporate Defendants concealed the fact that they collected at least $482.08 more in interest from Mr. Kline than he owed on the First Mortgage, and used that amount to pay for attorney's fees and expenses which the Corporate Defendants had no right to charge.

On December 21, 2015, Mr. Kline again moved for leave to amend the complaint to add RICO and fraud claims based on the new evidence and the alleged false representations made by the Defendants in this action.  (Doc. ## 489-491, PageID#8687)

### M.  The Grant Of Summary Judgment And Denial of Leave To Amend

On December 23, 2015, the court granted summary judgment on each of Appellant's claims arising from the alleged improper fees and expenses.  (Doc. #492, PageID#8959)

Ignoring the detailed analysis in Mr. Kline's papers refuting the Defendants' claims that the hidden escrow balance consisted of "past-due interest" owed by Mr. Kline, the court credited Ms. Cartmill's October 30, 2015 Affidavit in holding that:

> There is no evidence in the record to indicate that Kline was not charged the proper amount for the balance due to the escrow account or the accrued interest on the Adjustable Rate Note.  Kline has not pointed to any evidence that would suggest either amount was inaccurately computed or artificially inflated to conceal the

25

inclusion of attorneys' fees.

(Doc. #492, PageID#8923)    Moreover, the court found that the previously-concealed transactions in the new Escrow History were ultimately irrelevant, since they occurred after "Kline's business with Defendants had ended":

> There is no question that the transactions to the escrow account . . . are somewhat opaque in nature. However, these transactions occurred <u>after</u> payoff. At that point in time, Kline's business with HomEq had ended, and Kline has not explained why HomEq … was not free to do what it wished with the proceeds generated from the payoff. Wells Fargo and Barclays readily concede that the $412.96 surplus . . . was subsequently applied to "the outstanding corporate expense advances', and the undisputed evidence shows that Reimer was then paid $510.00 in attorney's fees. However, no reasonable jury could conclude that these post-payoff transactions could constitute a breach [of the mortgage contract] . . . when the transactions occurred *after* all parties' rights and duties under it had been extinguished.

(PageID#8924)    As a result. the court dismissed the claims alleging improper collection of fees and expenses on the First Mortgage in November 2007.

The court relied on conclusory testimony from defendants' witnesses in granting summary judgment on other claims as well.   For instance, though the court recognized that collecting attorney's fees from mortgage borrowers is illegal in Ohio, and that Mr. Kline had been improperly charged for $350.00 in legal fees by MERS and Lerner to pay off the Second Mortgage in November 2008, the court relied on Ms. Cartmill's affidavit to find no actionable misconduct because the fees were purportedly repaid to Mr. Kline several weeks later. (PageID#8900, 8909,

8927)   The court rejected the argument that Defendants had waived the affirmative defense of "payment" by failing to allege it until it was raised in Cartmill's October 2015 Affidavit, finding that "payment is an affirmative defense" only "to a claim arising from an agreement creating a monetary obligation, such as a debt." (PageID#8900-8901)

Based on its finding that the $350.00 in legal fees were ultimately refunded to Mr. Kline, the court also dismissed the claims alleging that the Defendants acted illegally in charging fees and expenses associated with Wells Fargo defending itself in a lawsuit brought by itself.  (PageID#8926-8927)

Similarly, though acknowledging that Barclay's witness Matthew Perry testified that  "that Kline's account was . . . improperly assessed a post-acceleration late fee …of $69.12", (PageID#8885), the court credited Perry's conclusory assertion that HomEq "refunded" that amount to Mr. Kline:

> Mr. Perry also testified that the error was corrected on December 3, 2007, by a reversal of the $69.12 charge and a refund of the same amount to the escrow account for the purpose of disbursing the refund to Kline.

 (PageID#8885)

Finally, with regard to Mr. Kline's allegations that the Corporate Defendants and Reimer had no right to charge Kline for any legal fees or expenses associated with the 2005 Foreclosure because they instituted the action based on representations that the newly disclosed evidence shows were fraudulent, the court

found that Mr. Kline had no right to raise these claims because they were not asserted in his First Amended Complaint filed in 2010.  (PageID#8891-8893, 8917-8919)

### 1.  Leave To Amend

On December 23, 2015 – just two days after the motion was made -- the court denied Plaintiff's Motion to Amend the Complaint.  (Doc. # 494, PageID#8940)  The court cited two bases for its unusually expedited decision.   First, the court found that allowing amendment to add these claims would be "futile" because the proposed Amended Complaint is based on "exactly the same evidence that" the court has already "considered and rejected" in denying additional discovery and granting summary judgment in its September 25 and December 23, 2015 decisions.  (PageID#8943)   Second, the court found that Kline had engaged in "undue delay", since the allegations supporting the RICO and fraud claims were "materially identical to the allegations that prompted the filing of this action" and "have been with this case since its inception."  (PageID#8944)

### N.  Appellant's Rule 60 Motion

On January 28, 2016, Mr. Kline filed a motion under Rule 60 based on the Defendants alleged misconduct in (i) making misrepresentations in discovery responses, and producing critical documents after discovery had closed; (ii) filing inaccurate documents which concealed the escrow balance owed to Mr. Kline, and the payment of attorney's fees and expenses from the escrow balance;  and (iii)

falsely representing that the escrow balance consisted of past-due interest which Mr. Kline owed. (Doc. ## 496-498, PageID#8970-9081)   Appellant also moved for reconsideration under Rule 59.

In response, the Corporate Defendants posited their <u>third</u> explanation as to why their conduct was proper.   Thus, after <u>first</u> claiming that none of Reimer's attorney's fees were passed on to Kline, and <u>then</u> claiming (after the concealed post-payoff disbursements from the concealed escrow balance were finally revealed in March 2015) that the escrow balance came from properly-charged interest, the defendants now claimed that – even if interest was overcharged -- Defendants had the right to assess additional, undisclosed charges after payoff.  (Doc. #506, PageID#9171)

On July 18, 2016, the court denied the motion for reconsideration and for relief under Rule 60.  (Doc.  #513, PageID# 9366)

### 1. Denial of the Motion For Reconsideration

While again recognizing that the "collection of attorney fees incurred in connection with a foreclosure action is illegal under Ohio law", (PageID# 9376), the court found that "there is simply no evidence that [HomEq] paid any attorney fees out of the escrow account."  (PageID# 9380)  According to the court, Ms. Cartmill's testimony "provides no support" for the claim that attonrney's fees were paid from the escrow balance: while Cartmill testified that "a line-item for attorney fees was 'added to the amount that the borrower owed'", she "expressly testified that she did

29

not know 'whether this attorney fee amount in whole or in part was taken out of the

escrow balance."  (PageID# 9378)   The court concluded:

> Plaintiff has failed to put forth any affirmative <u>evidence</u>
> that calls into question Cartmill's subsequent affidavit . . .
> which contained no reference to payments to the Reimer
> firm.  Rather, Plaintiff only proffers conjecture as to how
> Barclays, or one of the other Corporate Defendants, may
> have diverted money from the escrow account to the
> Reimer firm.

(PageID# 9379)

With regard to the allegedly false representations about the escrow balance

purportedly coming from "past-due interest", the court relied on Defendants new

explanation for their conduct to find that the alleged fraud – even if true – was

irrelevant.   Citing to language in a payoff quote issued to Kline in November 2007,

the court found that defendants had purportedly reserved the right to use any balance

in the escrow account to reimburse themselves for other expenses they "had

reasonably incurred."   (PageID# 9383)  The court concluded:

> Thus, even assuming arguendo that Plaintiff paid $482.08
> more in interest than he actually owed at the time of the
> November, 2007, payoff, there is no genuine issue of
> material fact as to whether Barclays actually incurred the
> costs for which it reallocated the excess amounts in
> Plaintiff's escrow account.

(PageID# 9383)

30

### 2.  Denial of the Motion to Amend

The court found that its refusal to consider claims emanating from the 2005 foreclosure was proper, because Plaintiff "unduly delayed" seeking leave to amend to add claims regarding the 2005 Foreclosure until February 2015.  (PageID#9390-9391)   Similarly, the court found that plaintiff "unduly delayed" filing the RICO claim by waiting until February 2015 after Plaintiff indicated in a March 2014 Mediation Statement that he was preparing a RICO claim.  (PageID#9391)

The Court also found some of the proposed Amended Claims to be futile.  The court found that "allegedly false statements made … in filings with [a] Court" may not form the basis of a common law fraud claim." (PageID#9391, fn. 8)    The spoliation claim was futile because a party "may not bring an independent claim for spoliation under federal law."  (PageID#9391-9392)

### 3.  Denial Of the Rule 60 Motion

Finally, with regard to the motion for relief under Rule 60, the court found Mr. Kline could not raise the allegation that Wells Fargo committed misconduct by concealing a document indicating that the 2005 Foreclosure against Mr. Kline was fraudulently instituted, because the court had held that "the subject matter of the 2005 foreclosure action was excluded from the Court's consideration."  (Doc. #513, PageID# 9395)

The court also found that the representations in "the Cartmill affidavit, which stated that no attorney fees were paid out of the escrow account, was acceptable Fed.

R. Civ. P. 56 evidence, and certainly not fraudulent, as would be required under [Rule] 60." (PageID# 9396)

Finally, with regard to the claim the Defendants engaged in fraud by producing, relying upon, and repeatedly filing an inaccurate Escrow History in this litigation, the court found that this did not justify relief under Rule 60 because: (i) "there is no evidence that Reimer was aware of the modified escrow history prior to Barclays producing it in March 2015"; (ii) Barclays eventually produced the accurate escrow history, and thus "any resultant prejudice was thereafter eliminated"; (PageID# 9397); and (iii) there was no evidence that "the Corporate Defendants' filings were willfully blind or in reckless disregard of the truth." (PageID# 9398)

The court also summarily rejected the argument that attorneys for the Corporate Defendants committed fraud on the court by filing and relying on the inaccurate Escrow History in support of summary judgment in April 2015 after they had already received the modified Escrow History from their client. (PageID# 9397) Relying on representations made by the Corporate Defendants, the court noted that the attorney "averred that he did not receive the modified Escrow History until shortly before" he produced it to Appellant and "did not 'fully interpret and understand the information'" therein prior to filing the motions for summary judgment. (PageID# 9397) According to the court, "even assuming that Corporate Defendants' filing and relying on the initial Escrow History was careless, such

carelessness is insufficient to warrant concluding that [the attorney] had committed fraud on the court." (PageID# 9398)    The court closed by saying that, "by accusing [the attorney] of fraud, without evidence suggesting bad faith or intent to deceive, "Plaintiff's counsel has violated his Fed. R. Civ. P. 11(b) obligations." (PageID# 9398, fn. 9)

## SUMMARY OF ARGUMENT

The court below committed error in granting summary judgment to the Defendants on Appellant's claims, ignoring abundant evidence in the record from Defendants' own witnesses demonstrating that the attorney's fees, expenses and late fees at issue were assessed against Mr. Kline, and that they were not refunded as Defendants have belatedly – and improperly – claimed.

The court below erred in denying Appellant's Rule 60 motion, as there was substantial evidence demonstrating that (i) Defendants had repeatedly represented in discovery responses that they did not have certain critical documents, only to produce them after discovery had concluded; (ii) the Corporate Defendants repeatedly filed and relied upon a knowingly inaccurate and incomplete Escrow History; (iii) the Corporate Defendants and their counsel made repeated false representations regarding fundamental matters in this litigation.

The court erred in striking the class allegations from the Complaint, ignoring Appellant's repeated attempts to advise it of the Defendants' belated disclosures and the attendant need to revise the Scheduling Order to conduct additional discovery.

33

Even if Appellant had been tardy, that would not have justified the court's action in striking the class allegations.

Finally, the court erred in denying Appellant's February 2015 and December 2015 motions to amend the complaint. The February 2015 amendment was (i) within the Scheduling Order deadline for amendments, (ii) before the end of discovery, and (iii) based on facts uncovered during discovery, and the Appellant provided ample notification to the Defendants in prior filings that these matters were in issue. As for the December 2015 proposed amendment, it was based on the documents belatedly disclosed by the Corporate Defendants in March and June 2015 in violation of their discovery obligations. Courts have routinely found that facts uncovered from belated disclosure justify an amendment of the complaint.

## STANDARD OF REVIEW

The district court's grant of summary judgment is subject to *de novo* review. The district court's (i) denial of Appellant's Rule 60(b) motion, (ii) denial of Appellant's motions to amend, and (iii) grant of Defendants' motion dismissing the class claims under Rule 41(b) are each reviewed for abuse of discretion. An abuse of discretion exists when a court "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." In re Ferro Corp. Derivative Litig., 511 F.3d 611, 623 (6th Cir. 2008).

# ARGUMENT

## POINT I

### THE COURT COMMITTED ERROR
### IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S CLAIMS

In granting summary judgment, the court found that there were no genuine

issues of fact with respect to the Defendants' imposition of the fees and expenses

challenged by Mr. Kline.  In reaching its conclusions, the court principally relied on

three pieces of evidence: (i) allegations raised for the first time in Ms. Cartmill's

October 30, 2015 Affidavit; (ii) testimony from defendants Rule 30(b)(6) witnesses,

and (iii) "admissions" resulting from Appellant's belated Responses to Defendants'

Requests for Admission.

As shown below, the lower court committed clear error in repeatedly crediting

testimony presented by the Appellees' witnesses in finding that improper fees and

expenses were either never assessed to Mr. Kline, or were subsequently refunded.

The court also committed error with regard to its assessment of the affirmative

defense issue, the effect of Mr. Kline's belated filing of responses to the Requests to

Admit, and other matters relating to the charges at issue.

1. **THE COURT ERRED IN FINDING THAT UNDISPUTED EVIDENCE DEMONSTRATED THAT THE DEFENDANTS REFUNDED THE POST-ACCELERATION LATE FEE**

Several of plaintiffs' claims in this litigation – the FDCPA claim against

Reimer, the breach of contract action against Wells Fargo and MERS, and the unjust

enrichment action against HomEq -- arise from the allegation that the Defendants

improperly charged Mr. Kline for late fees after his loan was accelerated in 2007.

The imposition of monthly late fees after a loan has been accelerated and the entire

debt called due has uniformly been prohibited by each of the hundreds of courts

which have considered the issue.  See Mazzei v. The Money Store, 288 F.R.D. 45,

67 (S.D.N.Y. 2012) (in granting class certification, the trial court  noted that "the

defendants do not produce a single case or statute in which a state has upheld or

allowed a late fee after acceleration where a contract does not expressly provide for

such a fee").

In fact, HomEq's deponent Matthew Perry admitted that "at the point where

you accelerate a loan, you're no longer allowed to collect the late fees" from a

borrower.  (Doc. #465-3, PageID#7947-7948)   Perry also acknowledged that –

though HomEq and other Defendants had repeatedly represented that Mr. Kline was

only charged $178.90 in late fees which were all assessed before acceleration  -- Mr.

Kline was charged for at least one post-acceleration late fee on November 16, 2007

which had previously been concealed.  (Doc. #465-3, PageID#7964)

Perry admitted that the collection of the post-acceleration late fee was an

error.  (Doc. #465-3, PageID#7971)  Perry testified that, to correct the error, a check

for the overcharge would have been issued to Mr. Kline :

> … He would have received an escrow check.
> Q. Of $69.12?
> A. And $0.12.

MR. GROBMAN: To the extent that such a check exists,
I would request that it be provided.

(Doc. #465-3, PageID#7969).  Though Appellant requested evidence of payment,

Defendants never provided a copy of the check, or any other evidence that the late

fee was actually refunded.

Despite the absence of any such evidence – indeed, Mr. Perry testified that "I

don't know how the money was returned to him" (Doc. #465-3, PageID#7971)  --

the court found that undisputed evidence demonstrated "that the servicer refunded

the sole erroneous charge to Kline for such fees."  (Doc. # 492, PageID#8886. See

also  PageID#8930, PageID#8933-8934)  As a result, the court dismissed the claims

against Wells Fargo (breach of contract), Barclays (unjust enrichment) and Reimer

(violation of §1692f(1) of the FDCPA) based on the assessment of such fees.   For

several reasons, the court's conclusions were in error.

First, although "payment" is an affirmative defense which is required to be

asserted in an answer under Rule 8 of the FRCP, Barclays, Wells Fargo and Reimer

never raised the defense of payment in their answer, or at any point before Perry

testified on February 25, 2015.   As a result, the defense of payment should have

been held waived.  Bank Leumi Israel v. Lee, 928 F.2d 232, 235 (7th Cir. 1991)

(defendant waived affirmative defense of payment by failing to include it in its

answer)

Secondly, in crediting Mr. Perry's assertion that a check would have been

issued to Mr. Kline to correct the improper late fee, the court violated the cardinal

rule that "courts may not resolve genuine disputes of fact in favor of the party

seeking summary judgment." <u>Tolan v. Cotton</u>, 134 S.Ct. 1861, 1866 (2014).   The

failure to provide any evidence that Mr. Kline was actually repaid required denial of

the motion.  As the court said in <u>Loudakis v. Loudakis</u>,1993 Ohio App. Lexis 2465,

*4  (May 10, 1993):

> Once evidence of an obligation is established, the burden
> is upon the defendant to prove any payments.  This
> follows from the fact that payment is an affirmative
> defense to an action on a debt, and is consistent with the
> general principle that the burden of proof should be upon
> that party who is in the best position to come forward
> with evidence. … It can be expected that a payor will
> retain receipts, cancelled checks, or other satisfactory
> proof of payment.

See also <u>Lopez v. Citizens Auto Fin</u>., 2009 Ohio 1082, ¶13 (8th DCA 2009) (finding

that "a debtor's affidavit that claimed that the debtor had made [certain] payments" is

"self-serving [where] the debtor failed to attach any evidence of payment."); <u>U.S. v.</u>

<u>Sylvester</u>, 2015 U.S. Dist. Lexis 15275, *9 (E.D. Mich. 2015) (defendant must

produce specific and concrete evidence of payment; "cancelled checks, bank

statement, tax records and sworn affidavits may be acceptable as evidence of

payment")   Thus, the court erred in crediting Mr. Perry's unsupported claim that

HomEq issued a check to Mr. Kline for the improperly collected post-acceleration

late fee.

In granting summary judgment, the court also relied upon Mr. Kline's failure to respond to Requests for Admission served on him until February 2015, and found that Appellant was "deemed to have admitted" that he had "no affirmative evidence to establish that the particular late charges which were assessed . . . were accrued and applied after your mortgage loans were accelerated…." " (Doc. #492, PageID#8930)  See also  PageID#8930 (Kline admitted that "he was never charged post-acceleration late fees" by failing to timely respond to Reimer's Request for Admission); Dock #492, PageID#8934 (same as to Barclays).

Admittedly, failing to timely respond to these requests was an oversight. However, as Mr. Kline stated in his February 13, 2015 Response to Wells Fargo's Request to Admit, Plaintiff could not answer the Requests "because plaintiff has not yet had the opportunity to take the depositions of any of the defendants."  (Doc. #417, PageID#6510)   In fact, it was not until HomEq's deposition on February 25, 2015 that HomEq first admitted that – contrary to the representations made in the November 14, 2007 Payoff Letter as well as those made by Defendants in this litigation—HomEq and Wells Fargo concealed the fact that they had charged Plaintiff for at least one post-acceleration late fee.   Even at that point, the Corporate Defendants have since claimed that HomEq refunded the improper late fee, a claim which the concealed Escrow History indicates is demonstrably false.

It would be manifestly unjust to permit Appellant's late response to the Requests for Admission to resolve an ultimate issue of fact – that a post-acceleration

late fee was <u>not</u> charged to Mr. Kline -- when defendant's own witnesses

subsequently provided testimony admitting that a post-acceleration late fee <u>was</u>

charged.  <u>FDIC v. Prusia</u>, 18 F.3d 637, 6401 (8th Cir. 1994) ("Permitting the

amendment of responses to a request for admissions is in the interests of justice if

the record demonstrates that the 'admitted' facts are contrary to the actual facts.").

Courts have routinely held that admissions can be withdrawn where new evidence

indicates that the admitted facts are not true.   <u>Sec. Ins. Co. of Hartford v. Trustmark</u>

<u>Ins. Co.,</u> 217 F.R.D. 296, 298 (D. Conn. 2002) (allowing withdrawal of admission

where later discovered evidence demonstrated that the admission was clearly

erroneous);  <u>Branch Banking and Tr. Co. v. Deutz Allis Corp</u>, 120 F.R.D. 655, 660

(E.D.N.C. 1988) (when "new evidence is discovered after the admission … Rule

36(b) withdrawal should be allowed.");  <u>Allianz Global Risks Insurance Co. v.</u>

<u>Kutzler Express, Inc.,</u> 2016 U.S. Dist. Lexis 144847, *7 (E.D. Wis. 2016)

("Withdrawal may be proper when an admission is no longer true because of

changed circumstances")  This is particularly the case where – as here -- the

Defendants themselves repeatedly concealed the true facts until well after the

responses to the requests for admissions were due, and made false representations to

the contrary in their communications to Mr. Kline and the court.  *See generally*

<u>Hayes v. Norfolk So. Corp.,</u> 2001 U.S. App. Lexis 27089 (6th Cir. 2001)

(unpublished) ("[A party] cannot hide relevant, harmful evidence in violation of the

rules of discovery and then claim unfair surprise when the damning evidence is uncovered late in the proceedings.")

Under Rule 36(b), an admission can be amended or withdrawn "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  No formal motion need be made to withdraw an admission: "a withdrawal may be imputed from a party's actions, including the filing of a belated denial." United States v. Petroff-Kline, 557 F.3d 285, 293-94 (6th Cir. 2009); Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997) Allowing amendment is appropriate "when upholding the admission would practically eliminate any presentation on the merits of the case.'" Riley v. Kurtz, 194 F.3d 1313 (6th Cir. 1999) (internal quotes omitted).  Moreover, the party opposing withdrawal has the burden of showing that it would be prejudiced, which "is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." Kerry Steel, 106 F.3d at 153, *quoting* Brook Village North Assoc. v. General Elec. Co., 686 F.2d 66, 70  (1st Cir.1982)   Defendants did not even attempt to make a showing of prejudice on summary judgment, and the court did not discuss the issue.

In sum, the undisputed evidence demonstrates that Mr. Kline was improperly charged for a post-acceleration late fee.  Even if Defendants had produced evidence demonstrating that the fee was ultimately refunded, the violation of §1692f(1) of the

41

FDCPA was complete when the improper amount was "collected."[4]  It was error to dismiss the claims arising from the improper collection of the post-acceleration late fee.

2. **THE COURT ERRED IN FINDING THAT UNDISPUTED EVIDENCE DEMONSTRATED THAT APPELLANT WAS NOT CHARGED FOR  REIMER'S ATTORNEY'S FEES**

It is undisputed that, under Ohio law, "contracts for the payment of attorney fees upon the default of a debt obligation are void and unenforceable." (Doc. #492, PageID#8920, *quoting* Wilborn v. Bank One Corp., 906 N.E.2d 396, 401 (Ohio 2009)   The Appellant presented the following proof – all concealed by the Defendants until after the discovery deadline had ended – in opposition to the summary judgment motions claiming that Mr. Kline was not charged for any of Reimer's attorney's fees on the First Loan in November 2008.

The new Escrow History produced on March 25, 2015 showed a previously undisclosed escrow balance of $412.96 owed to Mr. Kline after Payoff.  (Doc. #465-15, PageID#8017, at line 12/3/2007), as well as two post-payoff deductions to the Escrow Balance which were characterized as "Fee Adjustments" (one for $158.00 and one for $324.08) to bring that amount down to zero.  (Doc. #465-15, PageID#8017, at line 12/11/2007, 12/24/2007)   At her June 2015 deposition, HomEq's Cartmill acknowledged that an invoice for attorney's fees from Reimer

---

[4] This is also true of the Lerner Sampson legal fees which were purportedly refunded.

"was added to the amount that [Mr. Kline] owed" after the payoff.  (Doc.#497-19, PageID#9047-9048; Doc. #465-16, PageID#8036-8048)   When asked pointedly at the deposition whether – in light of these documents – she knew whether Reimer's representations that none of its attorney fees were "passed on to Mr. Kline with respect to the payoff of the first mortgage on his property" was accurate, Cartmill said:  "I do not."  (Doc. #497-19,PageID# 9055-56)

Despite this, the court granted summary judgment, finding no evidence from which a reasonable jury might conclude that the Defendants collected attorney's fees from Appellant.  (Doc. #492, PageID#8923)    The court stated that since the payoff quote to Kline "never included any amount of attorney's fees", "no reasonable jury would view the payoff quote as an attempt to collect them."  (PageID#8924) Second, relying on the Cartmill Affidavit, the court stated that "Wells Fargo has presented undisputed evidence that the specific funds deposited into the escrow account" came from "accrued interest", and that "Kline has not pointed to any evidence that would suggest that [the alleged accrued interest] was inaccurately computed or artificially inflated to conceal the inclusion of attorney's fees." (PageID#8923)

In any event, the court found that the post-payoff escrow was irrelevant since "Kline's business with Defendants had ended", and the "parties' rights and duties under [the loan contracts] had been extinguished."  (PageID#8924)  The court stated that Mr. Kline "has not explained why HomEq . . . was not free to do what it wished

43

with the proceeds generated from the payoff." (Id.)

The court committed clear error in reaching these conclusions. First, the conclusion that there was no evidence that the purported "accrued interest" allocated to escrow was "inaccurately computed or artificially inflated" simply ignores the detailed explanation in Appellant's Sur-reply, which used Defendants own records to demonstrate that – since Mr. Kline paid weeks before the December 9, 2008 payoff date on which interest was calculated in the payoff quote -- he owed far less in interest than what was quoted and collected. (Surreply, Doc. #487, PageID#8642, 8646-8648)

Second, in crediting the conclusory assertion in Cartmill's October 30, 2015 Affidavit that the escrow balance consisted of "reallocated past-due interest", the court violated the rule that a party's "self-serving affidavit carries little weight", especially when there is "copious evidence in the record to contradict it." Hofner v. Bradshaw, 622 F.3d 488, 500 (6th Cir. 2010)

Third, the court cites no support for its novel conclusion that a party has no right to seek redress against a party which imposes overcharges after his "business with Defendants" ends. Obviously, neither contractual nor other legal rights are "extinguished" after a transaction is completed.    The "explanation" for why lenders and their surrogates are not "free to do what they wish with proceeds" generated from a payoff is simple -- a bank is no more allowed to keep money received as a result of a fraudulent misrepresentation resulting in an overcharge than

would a supermarket which misrepresented prices to individual customers.

Finally, in denying the motion for reconsideration, the court indicated that its grant of summary judgment on this issue was not error because HomEq's Cartmill "expressly testified that she did not know" whether Reimer's "attorney fee . . . in whole or in part was taken out of the escrow balance", and thus "Plaintiff only proffers conjecture" that the Corporate Defendants "diverted money from the escrow account to the Reimer firm."    (Doc. #513,PageID# 9378)  However, a party is not required to have its opponent admit liability to withstand summary judgment. Appellant has presented abundant probative evidence indicating that the concealed escrow balance was used by the Corporate Defendants to pay for Reimer's legal fees; the fact that even HomEq's own witness did not deny that this occurred reinforces the conclusion that the grant of summary judgment was manifestly improper.[5]

In any event, even if there was affirmative evidence demonstrating that the escrow balance was not used to pay legal fees, that would not mean that the post-payoff deductions of other undisclosed fees and expenses were proper.  As HomEq's Perry testified in discussing Mr. Kline's account before the hidden escrow balance and the deductions thereto had been revealed:

---

[5]  The court dismissed the FDCPA claim against Reimer because there was no evidence that it "had any knowledge" of the concealed post-payoff transactions. (PageID#8881).  As this Court has stated, whether a debt collector knows about its improper conduct "is of no consequence", since "the FDCPA is a strict-liability statute."  Galati v. Manley Deas Kochalski, LLC, 622 Fed.Appx. 473 (6th Cir. 2015)

> [H]e would never ha[ve] paid more than he was quoted.
> Anything – if there were post-fees like that that one of the
> attorney firms came to us for, we would have to eat that as
> a loss.

(Doc. #497,PageID#9030)   Irrespective of whether they consisted of legal fees or

legal expenses, the two concealed deductions from the escrow balance after Mr.

Kline's payoff which reduced the $482.08 escrow balance to zero were directly

contrary to HomEq's assertion that Kline "would never have paid more than he was

quoted."

### 3. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE CLAIMS ARISING FROM THE LEGAL FEES AND <u>EXPENSES COLLECTED ON THE SECOND MORTGAGE</u>

#### A.  The Court Erred In Finding That Lerner Sampson's Legal Fees Were Refunded

The Appellant presented the following evidence in opposition to the summary

judgment motions relating to the collection of $350 in legal fees on the Second Loan

in November 2008.

In a February 19, 2008 letter, Lerner Sampson advised Appellant that he had

been charged $350.00 in attorney fees "incurred by [Lerner's] client to protect its

interest when named as a defendant in the lawsuit initiated by Wells Fargo Bank,

N.A.." (Doc. #465-14, PageID#8013)   For the first seven years of this litigation, no

party ever disputed that the Corporate Defendants assessed these amounts and

collected them from Appellant.

Despite this, the lower court granted summary judgment, crediting a

completely new defense raised by the Corporate Defendants and asserted for the first

time in Ms. Cartmill's October 30, 2015 Reply Affidavit – namely, that the

Corporate Defendants had reimbursed Mr. Kline for the assessment of legal fees in a

check for $422.32 dated December 21, 2007.  (Doc. #477-2, PageID#8485)   In

granting summary judgment on the claims arising from the assessment of these legal

fees, the court credited the Affidavit's claim that the legal fees had been included in

the $422.32 check, concluding that -- "though the collection of the attorney's fees

was not authorized by Ohio law" – "it was immediately remedied by its return to

Kline."  (Doc. #492, PageID#8902) See also Doc. #492, PageID#8909, 8927)

For several reasons, the grant of summary judgment in this regard was

improper.  As an initial matter, the defense of payment first raised in Cartmill's

October 2015 reply affidavit is an affirmative defense which MERS, Wells Fargo

and Lerner were required to assert in their Answers to the Complaint.  (FRCP Rule

8(c))   None of them did, and thus, the defense of payment should have been held

waived.  Bank Leumi , 928 F.2d at 235.   The lower court rejected this, concluding

that the payment defense in Rule 8(c) applies only to claims arising from "an

agreement creating a monetary obligation", and that Mr. Kline "has not

demonstrated that this affirmative defense applies" to his claims against the

Appellees."  Appellant is unaware of any such limitations on the affirmative-defense

pleading requirements imposed by Rule 8, nor does the decision point to any.

Therefore, it was error for the lower court to allow the belated invocation of this new

defense in Appellees' summary judgment reply papers – much less credit Cartmill's claim that the erroneous fee was refunded – without giving Appellant the opportunity to test this completely new assertion in discovery.    <u>DZ Bank AG v. Connect Insurance Agency, Inc</u>., 2016 U.S. Dist. Lexis 18614, *83 (W..D. Wash. 2016) (denying leave to amend to add affirmative defense after discovery closed, where it would be unfair to require the plaintiff to oppose the defense "without an opportunity for discovery")

Moreover, Cartmill's "discovery" of a purported "reimbursement check" is far from compelling evidence.  The check is in a different amount, and says on its face that it is "for payment of escrow to mortgagor." (Doc. #477-3, PageID#8488) Defendants have supplied no cover letter or other document indicating that the check included a refund of Lerner Sampson's attorneys fees. Moreover, if the legal fees had in fact been refunded by the December 21, 2007 check, then MERS, HomEq and Lerner Sampson would certainly have referenced that in the February 19, 2008 letter responding to Mr. Kline's request for an itemization of the fees and expenses charged to pay off the Second Loan.  (Doc. #465-14, PageID#8013)  However, defendants made no mention of the alleged "refund" in the letter describing their collection of  $350.00 in attorney fees.  (Id.)

**B.  The Court Erred In Finding That The Collection Of Legal Fees Associated With Wells Fargo Suing Itself Was Proper**

Because it found that the $350 in legal fees for Lerner Sampson's services had

been refunded to Kline, the court never addressed the question of whether MERS,

Wells Fargo and Lerner Sampson were permitted to charge legal fees associated

with defending against a lawsuit brought by itself.  (Doc. #492, PageID#8926-8927)

Appellant respectfully submits that such charges are palpably improper.

    "It is axiomatic that a party cannot sue itself."  Ohio Dept. of Human

Resources v. Ohio Dept. of Trans., 78 Ohio App.3d 658, 661 (10th App. Dist. 1992);

59 Am. Jur. 2d Parties, § 4 (One person cannot be both plaintiff and defendant in the

same action). Globe & Rutgers Fire Ins. Co. v. Hines, 273 F. 774, 777 (2d Cir.1921)

("It is elementary that the same person cannot be both plaintiff and defendant in the

same action."); Carbon County School Dist. No. 2 v. Wyoming State Hosp., 680 P.

2d 773, 775 (Wyo. 1984) (One cannot sue oneself); Chadd v. Delavan Industries,

Inc., 1987 U.S. Dist. LEXIS 15758, *5 (E.D. Mich. 1987) ("one may not sue

himself.");  Cruden v. Bank of N.Y., 957 F.2d 961, 968 (2d Cir. 1992) ("it would be

absurd to require the debenture holders to ask the Trustee to sue itself")

    Paragraph 7 of Mr. Kline's second Mortgage states that, if an action or

proceeding is commence which materially affects Lender's interest in the Property,

then the Lender "may make such appearances, disburse such sums, including

*reasonable* attorney's fees, and take any action as is *necessary* to protect Lender's

interest." (Doc. #465-2, PageID#7934, ¶7)   Thus, the Note governing the

relationship between Kline and Wells Fargo limits the recovery of fees to those that

are "reasonable " and "necessary", and Appellant is unaware of a single decision in

which a party was allowed to recover legal fees or expenses for suing itself.

Moreover, in making affirmative misrepresentations about the holder of the First and

Second Loans, and in concealing the fact that they were owned by the same entity,

Lerner Sampson violated the FDCPA, and MERS and Wells Fargo engaged in fraud.

###   C.   The Court Erred In Finding That The Fees Collected On Behalf Of Outsourcer 3 Arch Trustee Were Proper

Lerner Sampson, MERS and Wells Fargo also collected a $225 fee from Mr.

Kline by on behalf of 3 Arch Trustee Services which were described in the initial

payoff letter as "Previous Service Costs."  As the court below found, when the

Appellant asked the Corporate Defendants and Lerner Sampson for an explanation,

they described "this fee as an expense 'for the servicing of this loan and monitoring

of the lawsuit with services that included obtaining local counsel, production of

necessary documents and loan information, and billing of invoices.'" (Doc. #492,

PageID#8902-8903, *quoting* Doc. #465-14, PageID#8014).    According to

testimony of Appellees' witnesses quoted in the lower court opinion, 3 Arch

Trustees "would refer cases to local counsel" at HomEq's request, and referred the

Kline matter to Lerner Sampson "to file an answer on behalf of the second mortgage

holder."  (Doc. #492, PageID#8904)[6]

---

[6] The lower court said that "subsequent testimony" from HomEq's witness "has revealed that the servicer hired 3 Arch Trustee Services to monitor the amount of equity that existed in the Second Mortgage . . . so that the servicer could decide whether to bid on the property at a foreclosure sale." (Doc. #492, PageID#8903)  However, the record contains no evidence that 3 Arch did anything in Appellant's foreclosure other than refer the lawsuit to Lerner

50

Even if the two loans were not owned by the same entity, Fannie Mae

Guidelines demonstrate that the fees charged to Mr. Kline for 3 Arch's services were

palpably improper. Thus, as far back as 1996, the Fannie Mae Guidelines stated:

> Servicers, their agents, or any outsourcing firms they
> employ must not charge (either directly or indirectly) --
> and the Fannie Mae-retained trustees will not pay (to the
> servicer or any other person or entity) -- *any
> "outsourcing" referral fee* or a similar fee in connection
> with any Fannie Mae-owned or -securitized mortgage…

Fannie Mae Announcement 96-12.  Similarly, in August 2003, Fannie Mae published

the following guideline:

> If the servicer elects to use the services of a national law
> firm, outsourcing, or other agency or company that
> coordinates or refers legal work to others, the servicer is
> responsible for making certain that Fannie Mae is not
> asked to reimburse a servicer for services, legal fees, or
> expenses that are duplicative or allocated to the servicer's,
> attorneys or trustees overhead expenses…

Fannie Mae Servicing Guide: 104.01 (08/24/03)  The court dismissed the

applicability of the Fannie Mae Guidelines by finding no evidence that Kline's loans

were "governed" by them.  (Doc. #492, PageID#8904-8905; #8929-8930)  However,

at their depositions, even HomEq acknowledged that Fannie Mae's Guidelines set

forth the industry standard, (Doc. #465-3, PageID#7945-7946), and Lerner Sampson

acknowledged that it followed the fee guidelines set by Fannie Mae.  (Doc. #465-21,

PageID#8073)

---

Sampson.  In any event, it is completely unclear why such "monitoring" would be necessary
when the same entity owned the first mortgage as well.

Where, as here, a fee is prohibited by prevailing industry guidelines, Appellant submits that it was error for the court to hold that "no reasonable jury could conclude" that those amounts breached the contractual requirement that the fees be "necessary to protect [the] Lender's interest."  (PageID#8929)

## 4. THE COURT COMMITED ERROR IN REFUSING TO CONSIDER THE CLAIMS ARISING FROM THE 2005 FORECLOSURE

In opposition to summary judgment, Mr. Kline also presented evidence relating to improper legal fees and expenses assessed by the Corporate Defendants and Reimer in the 2005 Foreclosure.   Though Kline had repeatedly raised allegations regarding the impropriety of legal fees and expenses arising from the 2005 Foreclosure in papers filed below, and though Wells Fargo had belatedly produced documents which showed that the representations made by the Corporate Defendants to commence the 2005 Foreclosure were fraudulent, the court refused to consider these allegations because they were not in the First Amended Complaint filed by plaintiff in April 2010.  (Doc. #492, PageID#8891-8893, PageID#8918-8919)  Distinguishing the numerous cases holding that a party may raise allegations not included in a prior complaint if the defendant had been otherwise put on notice, the court found that such extraneous notice is permitted only "where language in a complaint is ambiguous", and the 2010 complaint was "silent as to any allegations of wrongdoing arising out of the 2005 foreclosure."  (PageID#8892)  Under these circumstances, the court found that "Defendants would have no reason to believe

52

that anything other the fees and expenses charged in the wake of the 2007

Foreclosure" were at issue.    (PageID#8918)  As for the allegations arising from the

documents belatedly produced by Wells Fargo in June 2015, the court found that

Appellant did not "cit[e] to any document in the record to support these assertions",

and therefore accorded them "no weight."  (PageID#8893)

     The court's conclusions were erroneous in several respects.

     <u>First</u>, the conclusion that Mr. Kline "did not cite to any to any document in the

record" to support the assertion that MERS did not own or hold plaintiffs mortgage

at the time it brought the 2005 foreclosure action is completely belied by Appellant's

papers in opposition to summary judgment.   Thus, in its memorandum in opposition

to Wells Fargo's Motion for Summary Judgment, *and* in opposition to MERS

motion, *and* in opposition to Reimer's motion, Appellant said the following:

> Documents produced by Wells Fargo on June 25, 2015 –
> four months after the March 1, 2015 discovery deadline –
> show that plaintiff's loan documents relating to his first
> loan were held by Wells Fargo at the time of the first
> foreclosure action.  (See documents annexed to Grob.
> Decl. as Exh. Q)
>
> The misrepresentation made by Reimer and MERS in the
> 2005 Foreclosure Action is significant.   Under Ohio law,
> a holder of a negotiable instrument has standing to sue;
> however, to be a holder, the named plaintiff must be "in
> possession of [the] negotiable instrument" that is endorsed
> in blank.   R.C. 1301.201(a)   Thus, in order to attain
> status as a holder, MERS "was required to show that it
> was in possession of the note." ."  <u>U.S. Bank, N.A. v.
> Adams</u>, 2012 Ohio 6253, p. 17 (Ohio Ct. App. 2012.  See
> generally R.C. 1301.201(a).  If – as the evidence

53

demonstrates -- MERS did not in fact possess the Note at the time the 2005 Foreclosure Action was initiated, then it had no right to initiate or maintain the foreclosure. … <u>Federal Home Loan Mortgage Corp. v. Schwartzwald</u>, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41 (2012) (". . . [A] lack of standing at the outset of litigation cannot be cured by receipt of an assignment of the claim or by substitution of the real party in interest").

Thus, had Reimer and MERS not misrepresented the true holder of Mr. Kline's First Mortgage note at the time of the 2005 Foreclosure Action, that lawsuit could not have been commenced or maintained and MERS would not have been entitled to recover attorneys fees from Mr. Kline under the relevant agreements.

Doc. #466, PageID#8092-8093, *citing* Doc. #465-17, PageID#8051.  See also Doc. #469, PageID#8148 ; Doc. #470, PageID#8175-8176; Doc. #465-20, PageID#8065-8066)

Second, wholly apart from the concealed evidence, the court's conclusion that the "Defendants would have no reason to believe" that the fees and expenses charged in the 2005 Foreclosure were at issue simply ignores numerous documents in the record in which Mr. Kline specifically detailed the alleged impropriety of those fees. [7]  The lower court's conclusion that the prior filed complaint must contain

---

[7] See, e.g. *Motion to Compel* dated May 13, 2014, Doc. #337, PageID#4995-4996 ("MERS and Reimer demanded the following improper fees [during the first foreclosure action]: late charges after acceleration, attorneys' fees and expenses (including service of process fees) associated with that part of the lawsuit in which MERS sued itself, and purported "legal fees" of $1,100…"); *Motion to Compel* dated May 12, 2014, Doc. #335, PageID#4860 (same as above);  *Amended Response to Barclays First Request for Documents*, Doc. #430, PageID#6889-6890 (in response to request for documents which relate to "any payments made by you . . . which are disputed in this litigation, plaintiff  responded by "referring defendants to. . . letters showing the amounts charged by Lerner Sampson and Reimer Lorber in 2005 and 2007");  Doc. #393-2, PageID#5715-5716

some "ambiguity" before a court may determine whether the Defendants were put on notice of a plaintiff's claims in other documents ignores settled case law holding that "extrinsic evidence can be considered in determining whether a defendant was on notice of the plaintiff's claims" for purposes of Rule 15. <u>Bledsoe v. Community Health Sys. Inc.</u> , 501 F.3d 493, 217 (6th Cir. 2007); <u>Miller v. Am. Heavy Lift Shipping</u>, 231 F.3d 242, 251, n.8 (6th Cir. 2000) (in which this Court stated that it was "inclined to believe that notice may be provided by sources outside the pleadings") Here, there can be no question that the Defendants below were repeatedly put on notice (in court filings, discovery and other documents) that the fees charged in the 2005 foreclosure were at issue in this litigation.

### POINT II

### THE COURT COMMITTED ERROR IN SUMMARILY FINDING THERE WAS NO FRAUD, MISREPRESENTATION OR OTHER MISCONDUCT UNDER RULE 60

Appellant alleged three bases for Rule 60 relief: (i) the Corporate Defendants failure to produce critical documents within the discovery deadlines; (ii) misrepresentations to the court with regard to the amounts which were owed by and collected from Mr. Kline; and (iii) misrepresentations by the Corporate Defendants attorneys.   The Sixth Circuit has interpreted "fraud, misrepresentation or

---

(3/14/2014 Mediation Statement sent to defendants setting forth "improper fees" in first foreclosure action); Doc. 393-1, PageID#5673-5678,  ¶¶32-49 (proposed amended complaint filed on February 3, 2015 setting forth allegations regarding improper fees in 2005 Foreclosure)

misconduct" within the meaning of Rule 60(b)(3) as follows:

> "Misrepresentation" can be interpreted as an affirmative misstatement. "Fraud" can be interpreted as reaching deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material. And "other misconduct" can be interpreted to reach questionable behavior affecting the fairness of litigation other than statements or the failure to make statements.

Jordan v. Paccar Inc., 1996 U.S. App. Lexis 25358, at *6 (6th Cir. 1996)

(unpublished)

## A.  **Defendants' Misconduct And Misrepresentations In Discovery**

"Failure to disclose or produce material requested in discovery can constitute 'misconduct' within the purview of 60(b)(3)." Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425, 428 (6th Cir. 1996).   As previously shown, Defendants repeatedly engaged in discovery misconduct by giving false answers in response to Mr. Kline's discovery requests, and in concealing critical documents from Plaintiff until March and June 2016, well after the discovery deadline had concluded.    The Corporate Defendants provided no explanation – none -- for their prior false responses to discovery requests, or their failure to produce these documents sooner.

In Jordan, 1996 U.S. App. Lexis 25358, the Sixth Circuit held that a party's "reckless approach to searching one's files for discoverable material" qualifies as "misconduct" requiring a final judgment to be overturned under FRCP Rule 60.   In Jordan, the plaintiff in a products liability case moved for a new trial after a jury

verdict because the defendant-manufacturer provided late discovery and failed to

disclose the existence of a particular lawsuit ("the Prewitt Litigation") involving the

truck-model at issue in response to an interrogatory which asked for other lawsuits

involving the truck.  The district court denied the motion for a new trial, finding that,

even if the defendant engaged in misconduct, plaintiff could not show that the failure

to disclose the litigation interfered with the development of its case.

On appeal, the Sixth Circuit reversed, ordering the district court to hold an

evidentiary hearing to determine whether defendant's conduct during discovery

constituted fraud or other misconduct under Rule 60. 1996 U.S. App. Lexis 2535, at

*33.  Faulting the district court for taking "many of [defendant's] assertions

[regarding its failure to provide timely discovery] at face value", the Court stated:

> [T]he district court did not hold any kind of hearing to
> determine exactly why [Defendant] had not turned over
> information in relation to Interrogatories Nos. 21 & 23
> earlier. [Defendants'] letter of June 12, 1992 indicates only
> that [Defendant's] attorney had "found several
> discrepancies." How? Why did these discrepancies occur?
> The district court did not inquire into these matters and they
> are of vital importance to the determination of whether
> "fraud" occurred or whether any "misrepresentation[s]" were
> made. . . Also of great importance for effective judicial
> review is when information about the other nine instances of
> litigation was turned over to the plaintiff and the reason for
> the delay in turning this information over in connection with
> [Defendant's] initial responses to Jordan's interrogatories. . .

1996 U.S. App. Lexis 2535, at *32-33.    The Court held that all the moving party

need show was that Defendant "engaged in deliberate or reckless behavior" in

failing to provide timely discovery.  1996 U.S. App. Lexis 2535, *26.   If that

showing was made, then "prejudice should be presumed."  Id. at 25-26.

The court below summarily concluded that "any resultant prejudice" to Mr.

Kline from the late production was "eliminated" because Appellant "conducted

additional discovery."  (Doc. #513, PageID# 9397)   However, Mr. Kline had no

opportunity to conduct discovery regarding the documents produced in late June

after the second set of depositions, including the documents produced on June 26,

2015 relating to whether MERS held the mortgage at the time it instituted the 2005

foreclosure.   Moreover, the court refused to consider claims arising from the belated

production of those June 2015 documents, and struck Appellant's class claims while

he was attempting to obtain Scheduling Deadline extensions occasioned by the late

production.

### B.  Defendants' Misrepresentations To This Court

"False testimony in a formal proceeding is intolerable."  ABF Freight v.

NLRB, 510 U.S. 317, 323 (1994)  A court "must neither reward nor condone such a

flagrant affront' to the truth-seeking function of adversary proceedings."  Id.   In this

case, there is substantial documentary evidence to indicate that Defendants made

numerous material misrepresentations to the court and plaintiff in this litigation.

#### 1. Filing Misleading Evidence, And False Representations About
#### Attorneys Fees  And Past-Due Interest On The First Mortgage

During this litigation, Wells Fargo, HomEq and Reimer repeatedly

58

represented in court filings that no legal fees were charged to Plaintiffs' account or paid by Mr. Kline on the first mortgage. See supra at pp. 13-14, 21-22.[8]   HomEq's witness Michael Perry also testified that Mr. Kline was not charged for any legal fees or expenses posted to his account after he paid off his loans in November 2007, consistent with HomEq policy. (Doc. #497,PageID#9030)

As subsequent events revealed, these representations were less than truthful. For the first seven years of this litigation, the Corporate Defendants and Reimer produced, filed and repeatedly relied upon an inaccurate Escrow History which concealed the fact that (i) there was a balance in Plaintiff's account after payoff which was transferred to escrow; and (ii) that balance was eliminated by charging Plaintiff for two post-payoff invoices for legal fees and expenses.  (See Doc. #35, PageID#466; Doc. #414, PageID#6133; Doc. #414-12, PageID#6144; ; Doc. #417-10, Exh. I, PageID#6471; Doc. #418, PageID#6605)   HomEq's own witness confirmed that the first Escrow History misrepresented critical information at her June 10, 2015 deposition.  ((Doc. #49719,PageID#9050-9051)    "The presentation of false evidence involves "a corruption of the truth-seeking function of the trial

---

[8] See also Doc. #207, PageID#2712, fn. 1 (Wells Fargo's August 2010 motion to dismiss represents that "No Reimer Lorber attorneys' fees were ever assessed against Kline or  collected from him."); Doc. #231,  PageID#3500 (emphasis in original) (papers filed by Wells Fargo in March  2011 represent that "no Reimer Lorber fees and expenses were ever assessed to or collected from Kline.")

process."" <u>Morris v. Ylst</u>, 447 F.3d 735, 744 (9th Cir. 2006), *quoting* <u>U.S. v. Agurs</u>, 427 U.S. 97, 103 (1976).  Courts have regularly found "that the affirmative submission of false evidence is . . . akin to a fraud on the court."  <u>Garcia v. Berkshire Life Ins. Co. of America</u>, 569 F.3d 1174, 1182 (10th Cir. 2009)

Faced with these misrepresentations, the Corporate Defendants filed the October 30, 2015 affidavit from Jacklin Cartmill claiming that the failure to produce an accurate Escrow History showing the escrow balance and post-payoff deductions was of little consequence, since the escrow balance came from "past-due interest" which was properly collected from Appellant.  (Doc. #477, PageID#8484, ¶5) However, as previously shown, the Corporate Defendants own documents demonstrate that the representations about the escrow balance consisting of "past-due interest" were themselves patently false.

Without holding a hearing, the court summarily found that there is no "evidence that [the] Corporate Defendants filings were willfully blind to or in reckless disregard of the truth."  (Doc. #513, PageID# 9398)   It is difficult to determine how Wells Fargo and HomEq's repeated filings of the inaccurate Escrow History on a loan held by Wells Fargo and serviced by HomEq was not willfully blind or reckless.   How could Wells Fargo and HomEq not have known that the initial Escrow History provided to Mr. Kline on February 7, 2008 and repeatedly filed in this case did not show the escrow balance in Appellant's account as of December 3, 2007 which was revealed in HomEq's own accounting database?

60

(Compare Doc. #465-13, PageID#8007 with Doc. #465-15, PageID#8017)   How could HomEq and Wells Fargo not have known that the first Escrow History also concealed two deductions for legal fees and/or expenses which occurred on December 11 and December 24, 2007?   The opinion below provides no answer.

Similarly, how could the court summarily conclude that the representation in the Cartmill Affidavit that the escrow balance came from "past-due interest" was "not fraudulent"?[9]  (Doc. #513, PageID# 9396)   Neither Cartmill nor anyone else at HomEq or Wells Fargo was ever asked a question about this new assertion in Cartmill's October 30, 2015 Affidavit, which is completely contradicted by the Corporate Defendants own records.  Okros v. Iafrate Const. Co., 298 Fed. Appx. 419, 433 (6th Cir. 2008) (unpublished) (reversing denial of Rule 60 motion, the Sixth Circuit found that "a finder of fact could reasonably conclude that" the plaintiff provided false testimony at trial)

## C.  Evidence of Fraud On The Court

Though unnecessary to grant relief under FRCP Rule 60, the evidence in the record indicates that counsel for Wells Fargo, Barclays and MERS have repeatedly engaged in conduct which constitutes a fraud on this court.

---

[9] The court characterized the Cartmill Affidavit as "stat[ing] that no attorney fees were paid out of the escrow account." (Doc. #513, PageID#9396)  In fact, the Affidavit does not say this, but instead makes an assertion about where the escrow balance *came from*.  In fact, in their opposition to the Rule 60 motion, even the Corporate Defendants admitted that a portion of the "proceeds" transferred to the Escrow Account "was allocated to reimburse Barclays for Reimer Lorber fees previously paid."  (Doc. #509, PageID#9227)

1. **Submitting Misleading Evidence**

On November 25, 2015, HomEq, Wells Fargo and MERS filed a Declaration from their attorney Russell Pope (Doc. #485-2, PageID#8632) which discussed the discovery of the documents produced to Mr. Kline's attorney on March 26, 2015. According to the Pope Declaration, HomEq purportedly "uncovered" the accurate Escrow History "approximately three weeks after the discovery cutoff in this case", which was March 1, 2015. (Doc. # 485-2, PageID#8632-8633, ¶3)

Nevertheless, despite the fact that Mr. Pope was aware (at the latest) by March 26, 2015 that the prior Escrow History was misleading -- and notwithstanding that he had the accurate Escrow History in his possession – Mr. Pope filed a motion for summary judgment on behalf of HomEq and Wells Fargo on March 27, 2015 which appended and relied upon the prior misleading Escrow History.  (Doc. #417-10, Exh. I, PageID#6471; Doc. #418,  PageID#6605)    In continuing to file and rely upon a misleading Escrow History after admittedly receiving the accurate version of the document, Mr. Pope and his law firm were -- at a minimum – either "willfully blind" to the fact that they were submitting misleading evidence, or "in reckless disregard of the truth."  Contrary to the lower court's conclusion that Appellant had to demonstrate that counsel for the Corporate Defendants "knowingly fabricated or falsified submissions to the court", (Doc. #513, PageID# 9398), an attorney who acts in reckless disregard of the truth in submitting misleading evidence commits fraud on the court.   Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.  1993)

2.  **Making False Representations**

In a brief accompanying the Pope Affidavit filed on November 25th and signed

by Mr. Pope, (Doc. #485, PageID#8621), the Corporate Defendants state that

"defense counsel did not have [the] opportunity to meet with cognizant Barclays

personnel to fully interpret and understand the information contained in the

additional records produced" before filing their summary judgment papers.

(PageID#8622)  Despite the admission that defense counsel purportedly did not

speak with HomEq "to fully interpret and understand" the belatedly produced

records before submitting the Corporate Defendants' summary judgment motions,

counsel made the following representation in the brief filed by Wells Fargo:

> [I]t is Defendants other than Wells Fargo who are
> charged with violating Ohio law [by assessing legal
> fees to Plaintiff.]  Even if Wells Fargo had been
> named in these allegations, *the disputed fee was not
> incurred by Reimer Lorber* for filing and prosecuting
> the foreclosure action in regard to the first Note.
> Rather, those fees were incurred by the Lerner
> Sampson firm in regard to protecting the investor's
> interests in the second Note.

(Doc. #417-1, PageID#6395 (emphasis added))  HomEq expressly incorporated each

of these arguments in their papers filed the same day.  (Doc. #418-1, PageID#6532)

Thus, at a minimum, HomEq and Wells Fargo's counsel acted in "reckless

disregard of the truth" in representing that Mr. Kline was not charged for any of

Reimer Lorber's legal fees before even speaking to HomEq or Wells Fargo about the

significance of the new documents produced in March 2015.  As shown above, not

even HomEq's own witness was prepared to deny that Mr. Kline was charged for

Reimer's fees at her June 2015 deposition.

Furthermore, counsel for HomEq, Wells Fargo and MERS was "wilfully

blind" or acted in reckless disregard of the truth in not only filing (and likely

preparing) Ms. Cartmill's October 2015 Affidavit, but also repeatedly relying on it

in briefs and other papers filed with the court.  Indeed, in November 2015, counsel

characterized the claim that the escrow balance was comprised of an interest

overpayment by Mr. Kline as "*blatantly inaccurate*."  (Doc. #481, pp. 9-10

(emphasis added))   Had counsel analyzed Defendants' own papers detailing the

payoff breakdown and the allocation of the money paid by Mr. Kline on the first

mortgage in November 2007, they would have realized that the assertion that the

escrow balance was comprised of "past-due interest" was false.  In claiming that the

escrow balance was comprised of accrued interest despite overwhelming

documentary proof to the contrary, counsel for the corporate defendants were

willfully blind to or acted in reckless disregard of the truth.  Okros, 298 Fed. Appx.

at 432-433 (after analyzing the record facts, the Sixth Circuit reversed the lower

court's denial of defendant's Rule 60 motion, concluding that the  "finder of fact

could reasonably conclude that [plaintiff's counsel] committed fraud on the court"

because he had "cause to know" that his client's testimony was untrue and therefore

"acted in reckless disregard of the truth, given the information available");

In sum, at a minimum, the facts alleged more than demonstrate "the

evidentiary showing of fraud" necessary to require an evidentiary hearing to

determine whether the defendants engaged in "fraud", "misrepresentations", "other

misconduct" and/or "fraud on the court" the requiring relief under Rule 60.  <u>Paccar</u>,

1996 U.S. App. Lexis 2535, at *34 (faulting district court for accepting defendant's

responses to plaintiff's Rule 60 motion based on defendant's alleged misconduct in

discovery "at face value", the Sixth Circuit remanded with instructions to district

court to hold an evidentiary hearing)

## <u>POINT III</u>

### THE COURT ERRED IN STRIKING APPELLANT'S <u>CLASS ALLEGATIONS</u>

The court committed several clear errors of law in taking the extraordinary

step of striking the class allegations in the Complaint with prejudice pursuant to

Rule 41.

**First,** the court committed error in disregarding Mr. Kline's repeated attempts

to get the court to adjust the Scheduling Order in light of the belated discovery

produced by the Corporate Defendants.   The court said it would disregard the

requests because "[t]he Federal Rules of Civil Procedure are clear: any 'request for a

court order must be made by motion.'"  (Doc. #463, PageID#7864)   However, Rule

6(b) of the Federal Rules states in relevant part:

> (1) When an act may or must be done within a specified
> time, the court may, for good cause, extend the time:
>
> (A) *with or without motion or notice* if the court acts, or if a

> *request is made*, before the original time or its extension expires; or
>
> (B) *on motion* made after the time has expired if the party failed to act because of excusable neglect.

(FRCP Rule 6(b)(1)(A) (emphasis added).  As the Supreme Court said in <u>Lujan v. National Wildlife Federation</u>, 497 U.S.  871 (1989), Rule 6 "painstakingly" distinguishes between a pre-deadline "request" and a post-deadline "motion":

> Rule 6(b)(1) allows a court ("for cause shown" and "in its discretion") to grant a "request" for an extension of time, whether the request is made "with or without motion or notice," *provided* the request is made before the time for filing expires."  *After* the time for filing has expired, however, the court (again "for cause shown" and "in its discretion") may extend the time only "upon motion."

Id. at 896, n.5 (emphasis in original).   In rejecting plaintiff's April 10th, May 7th and May 29th requests because the court instructed plaintiff "to only file motions", this court improperly imposed a requirement which is completely inconsistent with Rule 6.

Rather than employing the "good cause" standard to determine whether an extension should be granted under Rule 6, the court erroneously construed the plaintiff's extension requests "as motions under Rule 56(d)(2)", (PageID#7866) However, even if Rule 56(d) were the correct standard for analyzing Mr. Kline's request to extend the Scheduling Order deadlines, the court's analysis completely disregarded both law and facts which mandated further discovery.

As has every other Circuit, this Court has held that "summary judgment should not ordinarily be granted before discovery has been completed." Tarleton v. Meharry Medical College, 717 F.2d 1523, 1535 (6th Cir. 1983); See Bobo v. UPS, Inc., 665 F.3d 741, 754 (6th Cir. 2012) quoting Resolution Trust Corp. v. North Bridge Ass., Inc., 22 F.32 1198, 1208 (1st Cir. 1994) ("When Rule 56(f) functions properly, it ensures that, in the mine-run of cases, a litigant who fails to answer potentially relevant discovery requests on schedule will be unable to demand summary judgment until after he remedies his failure.")

As Mr. Kline repeatedly advised the court, not only was there belated discovery produced by the Corporate Defendants through June 26, 2015, but MERS refused to produce a privilege log despite withholding documents responsive to discovery. The lower court found that plaintiff was not entitled to a privilege log because Mr. Kline has given "no explanation of what 'material facts' a privilege log from MERS would provide that Plaintiff would need to respond to Defendants' pending Motions for Summary Judgment." (PageID#7870) Appellant is unaware of

67

a single case in which a court has held that a party's right to receive a privilege log is dependent on a showing of "materiality."

The courts' determination that the documents produced by Wells Fargo, Barclays and MERS after the March 1st discovery deadline did not justify an extension of the deadline beyond March 1st is equally perplexing.   The belated disclosures in March and June 2015 provided critical evidence which the Defendants should have produced years earlier.   Even the Corporate Defendants acknowledged that additional discovery needed to be taken and the deadlines extended.[10]

The court found that – since the Defendants "accommodated many of Plaintiff's requests" --  plaintiff's "argument that he has a 'right' to engage in further discovery . . . [is] *largely moot*" because:

> Even after the close of discovery and the filing of their
> motions, Wells Fargo, Barclays and MERS supplemented
> their previous disclosures by providing Plaintiff with
> additional documents and accommodated his attorney's
> wish to conduct further depositions of their representatives.

(PageID#7870)  However, the question of whether plaintiff had a right to seek an extension of the March 1st discovery deadline as a result of defendants' belated disclosures was hardly "moot", since the court's finding that plaintiff was not entitled to further discovery formed the basis for its decision striking the class allegations from the Amended Complaint.  (Decision, pp. 42, 43-44)

---

Finally, even if Appellant had not made a proper request for an extension of the Scheduling Order deadlines, and defendants' belated document disclosures did not constitute good cause for extension, it still was error for the Court to dismiss the class claims with prejudice under Rule 41 of the Federal Rules of Civil Procedure.

While a district court has the authority to dismiss a cause of action for failure to prosecute, "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir. 2005) As a result, under well-settled Sixth Circuit precedent, four factors should be considered to determine whether a claim can be dismissed:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

Mulbah v. Detroit Bd. Of Educ., 261 F.3d 586, 589 (6th Cir. 2001) The district court failed to even refer to, much less engage, in this analysis.

Moreover, the court's decision to strike the class allegations in the Complaint was erroneous for another reason. "Under Rule 23(c)(1), the trial Court has an independent obligation to decide whether an action was properly brought as a class action, even where . . . neither party moves for a ruling on class certification."

<u>Mendoza v. Champion Int'l Corp</u>., 340 F.3d 1200, 1216 (11th Cir.

2003); <u>Becherer v. Merrill Lynch</u>, 193 F.3d 415, 430 (6th Cir. 1999) (Moore,

concurring),  quoting 7B Wright, Miller, & Kane, Federal Practice and Procedure §

1785, at 89-90 (2d ed. 1986) (the "Court has an independent obligation to decide

whether an action brought  on a class basis is to be maintained even if neither of the

parties moves for a ruling" on certification);  <u>Trevizo v. Adams</u>, 455 F.3d 1155,

1161 (10th Cir. 2006) (same) In this respect as well, the court erred in striking the

class claims in the Amended Complaint without addressing the requirements of Rule

23.

## <u>POINT IV</u>

### <u>THE COURT COMMITTED ERROR IN DENYING
PLAINTIFF'S MOTION TO AMEND</u>

On February 3, 2015 -- one month *before* the deadline to amend and *before*

discovery concluded, Mr. Kline moved for leave to amend to add allegations arising

from the 2005 Foreclosure and two claims – fraud and RICO – based on facts

uncovered during discovery.   In December 2015, Appellant again moved to amend

the complaint to allege new facts and claims arising from the evidence which had

been uncovered since February 2015, including allegations arising from the

Defendants alleged false misrepresentations in the 2005 Foreclosure Action, and the

filing of misleading evidence and misrepresentations in this case.  The court

committed error in denying these motions.

First, Appellant's February 2015 motion for leave was made within the deadline set by the court, and therefore, "was timely and evidenced no prejudice to the other parties." SGIC Strategic Global Investment Capital, Inc. v. Burger King Europe GMBH, 839 F.32 422, 429 (5th Cir. 2016)  Moreover – though the court failed to address prejudice in denying Appellant's February 2015 motion to amend – Appellant had provided ample notice of its intention to amend and the facts on which the proposed amendment was based. (See *supra*, p. 7, fn. 5)  See Bledsoe, 501 F.3d at 517, 518 ("functional approach" to assessing notice requires court to determine if notice of allegations was provided to defendant in other documents); Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., 804 F.2d 787, 795 (2nd Cir.1986) ("[a] party cannot claim unfair surprise when it has been provided with notice of the subject of the amendment to a complaint, by discovery or documents, well in advance of the actual amendment.")  Finally, the fact that the motion was filed before discovery had been completed further demonstrates that amendment should have been granted.  Janikowski v. Bendix, 823 F.2d 945, 952 (6th Cir. 1987) (reversing denial of motion to amend as prejudice cannot be found where it was filed before the completion of discovery).   Appellant is unaware of a single case in which amendment has been denied where (i) it was sought within the deadline for motions to amend and before discovery has concluded; (ii) plaintiff had repeatedly advised the defendant that its conduct surrounding that transaction was at issue.

Moreover, both Mr. Kline's first and the second motions sought to amend the

complaint to include claims arising from facts revealed during discovery.   When a

party moves "to advance a new claim as a result of [] discovery, liberal amendment

of the complaint is provided for by Rule 15(a) of the Federal Rules of Civil

Procedure." Tucker v. Union of Needletrades, Indust. & Textile Employees, 407

F.3d 784, 788 (6th Cir. 2005).   This is particularly the case where that evidence

should have been produced earlier in discovery.

As the Sixth Circuit stated in Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis

27089 (6th Cir. 2001) (unpublished):

> [A party] cannot hide relevant, harmful evidence in
> violation of the rules of discovery and then claim unfair
> surprise when the damning evidence is uncovered late in
> the proceedings.

Id. at *17; Johnson v. Ventra Group, Inc., 1997 U.S. App. Lexis 21714, *8 (6th Cir.

1997) (unpublished) ("when new information giving rise to specific allegations of

fraud is allegedly obtained during discovery, the mandate or Rule 15(a) that leave to

amend shall be "freely given" must be adhered to in order to decide a case on the

merits.")

Moreover, in finding that the new claims in the proposed Amended Complaint

were "futile", the court simply ignored this Court's holdings in Slorp v. Lerner

Sampson & Rothfuss, et al., 587 Fed. Appx. 249 (6th Cir. 2014) – where it found that

making allegedly fraudulent representations in a state foreclosure proceeding

regarding the holder of a mortgage could form the basis for a RICO claim --  and in

72

<u>Wallace v. Washington Mutual Bank, F.A.</u>, 683 F.3d 323 (6th Cir. 2012), where this Court found that claiming that an entity is the holder of a mortgage in a foreclosure action when it is not constitutes an actionable "false representation" under the FDCPA, and that if that entity "did not have standing to bring the foreclosure action in the first place, the materiality of the false statement of ownership would be patent." <u>Id</u>. at 328, n.1.[11]  In addition, a party which makes "false statements" that obstructs a federal civil proceeding violates 18 U.S.C. §1512(c), and also engages in predicate acts under RICO.  *See* <u>U.S. v. Burge, 711 F.3d 803 (7th Cir. 2013)</u> <u>(defendant engaged in obstruction of justice under</u> §1512(c) where the evidence showed that he lied in answering interrogatories in civil proceeding)

## CONCLUSION

For all of the above reasons, Appellant respectfully submits that the decisions (i) granting summary judgment; (ii) denying Appellant's motion for relief under Rule 60; (iii) striking the class allegations in the Complaint; and (iv) denying the motions to amend should be reversed.

Dated: January 24, 2017

---

[11] Moreover, the court's suggestion that a party has no remedy where a litigation opponent makes false representations in a judicial proceeding (Doc. #513, PageID#9391 fn. 8) is also contrary to this Court's decision in Stratton v. Portfolio Recovery Ass<u>.</u>, 773 F.3d 443 (6th Cir. 2014) and to the Ohio Supreme Court's recent decision in <u>Taylor v. First Resolution Inv. Co</u>, 2016 Ohio 3444 (2016), where the court held that a party can bring both an FDCPA claim and a claim under the OCSPA "based upon debt collectors' representations made to courts in legal filings."

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
 *Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS
AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of
   Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 17,810 words, excluding the parts of the brief exempted by
   Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5)
   and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using
   Microsoft Word, in Times New Roman, Font Size 14.

CAPTION:

Kline _____ v.

Mortgage Electronic Registration

System, Et al.

**CERTIFICATE OF SERVICE**
Docket Number: __16-3932__

I, Paul. S. Grobman _____, hereby certify under penalty of perjury that on
                              (name)
January 24, 2017 _____, I served a copy of Brief for Plaintiffs-Appellants
              (date)

_____
(list all documents)

by (select all applicable)*

- ☑ United States Mail
- ☐ Federal Express
- ☐ Overnight Mail
- ☐ Facsimile
- ☐ E-mail
- ☐ Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Treanor Pope & Hughes | 500 York Rd. | Towson | MD | 21204 |
| Ulmer & Berne | 600 Vine St., Suite 2800 | Cincinnati | OH | 45202 |
| Lerner Sampson & Rothfuss | 120 E. Fourth St., Suite 800 | Cincinnati | OH | 45202 |
| Gallagher Sharp | 1501 Euclid Ave., 6th Floor | Cleveland | OH | 44115 |

1/24/17 _____          /S/ Paul S. Grobman, Esq. _____
      Today's Date                            Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form