# 16-3932

In the
**United States Court of Appeals**
For the Sixth Circuit

EUGENE KLINE, JON SHAYNE JONES, DIANA L. HUGHES, GEORGE ROSS, CAROL ROSS, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WELLS FARGO, HOMEQ SERVICING CORPORATION, LERNER SAMPSON & ROTHFUSS, BARCLAYS CAPITAL REAL ESTATE, INCORPORATED and REIMER, ARNOVITZ, CHERNEK & JEFFREY CO., fka Reimer, Lorber & Arnovitz Company, LPA,

*Defendants-Appellees,*

- and -

HEARTLAND HOME FINANCE, INC., WMC MORTGAGE CORPORATION, AMERIQUEST MORTGAGE COMPANY, CHASE HOME FINANCE, LLC, FLAGSTAR BANK, FSB and COUNTRYWIDE HOME LOANS, INC.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO AT DAYTON

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PAUL STUART GROBMAN, ESQ.
*Attorney for Plaintiffs-Appellants*
555 Fifth Avenue, 17th Floor
New York, New York 10017
(212) 983-5880

APPELLATE INNOVATIONS
(914) 948-2240

# TABLE OF CONTENTS

| | Page |
|---|---|
| Table of Authorities ………………………………………………………… | i |
| Preliminary Statement …………………………………………………… | 1 |
| Argument ……………………………………………………………………… | 2 |
| Point I - Appellants' Argument That Mr. Kline Failed To Properly Preserve The Issues Presented In Its Appellate Brief Is Baseless ………………………. | 2 |
| Point II - The Court Committed Error In Granting Summary Judgment …………… | 4 |
| A. It Was Error To Dismiss The Claims Arising From The Collection Of Post-Acceleration Late Fees On The First Mortgage ………………………………………...................... | 4 |
| B. It Was Error To Grant Summary Judgment On The Claims Arising From The Post-Payoff Collection Of Reimer's Attorney's Fees And/Or Legal Expenses ……………………… | 7 |
| C. It Was Error To Grant Summary Judgment On The Claims Arising From The Legal Fees And Expenses Collected On The Second Mortgage ………………………………………………. | 11 |
| 1. The Collection of Lerner Sampson's Legal Fees And Expenses ……………………………………………….. | 11 |
| 2. The Fees Paid to 3 Arch Trustee …………………………… | 16 |
| Point III - The Court Committed Error In Failing To Grant Kline's Motion Under Rule 60 ……………………………………………………………………. | 17 |
| A. The Misconduct In Discovery ………………………………… | 18 |
| B. Filing and Relying Upon The Inaccurate Escrow History ……. | 20 |
| C. False Representations About Attorneys' Fees And Interest …… | 21 |

Page

Point IV
It Was Error To Strike The Class Allegations From The Complaint …….. 23

Point V
It Was Error To Deny Appellant's Motion To Amend The Complaint ...… 26

Conclusion ………………………………………………………….. 29

# TABLE OF AUTHORITIES

**Cases** **Page**

Bossen Architectural Millwork, Inc. v. Kobolak & Sons, Inc., 2015 U. S. Distirct Lexis 15552 (D.N.J. 2015) ………………………………….. 15

Capital One Bank (USA), N.A. v. Reese, 2015-Ohio-4023 (11th DCA 2015) ……………………………………………………………………. 6

Carpenter v. City of Flint, 723 F.3d 700 (6th Cir. 2013) ………………. 25

Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999) ………… 9

Conti Corp. v. Ohio Dept. of Admin. Services, 90 Ohio App.3d 462, (10th App. Dist. 1993) ……………………………………………………... 15

Desjardins v. Desjardins, 311 F.2d 111 (6th Cir. 1962) ……………….. 6

FDIC v. Prusia, 18 F.3d 637 (8th Cir. 1994) …………..……….………. 7

Freeland v. Amigo, 103 F.3d 1271 (6th Cir. 1997) ………….…………. 25

Galati v. Manley Deas Kochalski, LLC, 622 Fed. Appx 473 (6th Cir. 2015) ……………………………………………………………………. 6

Garcia v. Berkshire Life Ins. Co., 569 F.3d 1174, 1182 (10th Cir. 2009) 20

Harris v. U.S., 170 F.3d 607, 608 (6th Cir. 1999) ……………………… 3

Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis 27089 (6th Cir. 2001) 7

Hofner v. Bradshaw, 622 F. 488 (6th Cir. 2010) ……………………….. 9

In re Intermagnetics America, 926 F.2d 912 (9th Cir. 1991) ……………. 22

In re Transcolor Corp., 296 B.R. 343 (Bank. D. Md. 2003) ……………. 15

Jordan v. Paccar, 1996 U.S. App. Lexis 25358 (6th Cir. 1996) ………… 19, 21

**Cases** Page

Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147 (6th Cir. 1997) .. 7

Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433 (6th Cir. 2008) ……………………………………………………...…. 6

Kline v. MERS, 2014 U. S. 141027(S.D. Ohio 2014) ………………… 19

Koehler v. Dodwell, 2000 WL 709578 (4th Cir. 2000) ………………… 25

Kreipke v. Wayne State Univ., 807 F.3d 768 (6th Cir. 2015) …………... 28

Lujan v. National Wildlife Federation, 497 U.S. 871 (1989) ………… 24

Milkovich v. Lorain Journal, 497 U.S. 1 (1990) ………………………. 22

Mulbah v. Detroit Bd. Of Educ., 261 F. 3d 586 (6th Cir. 2001) ………. 25

Lopez v. Citizens Auto Fin., 2009 Ohio 1082 (8th DCA 2009) ………… **5**

Nosker v. Gill Bros., 2007 U.S. Dist. Lexis 11885 (W.D. Mo. 2007) …. 25

Parsons v. City of Philadelphia, 2014 U.S. Lexis 170934 (E.D. Pa. 2014) ……………………………………………………………. 12

Romanoff Elec. Corp. v. Ohio Dept. of Admin. Services, 1994 Ohio App. Lexis 2835 (10th App. Dist. 1994) ………………………………… 15

Scott v. Fairbanks Cap. Corp., 284 F.Supp.2d 880 (S.D. Ohio 2003) .... 12

Sims v. Ohio Cas. Ins. Co., 151 F.App'x 433 (6th Cir. 2005) ………… 28

Slorp v. Lerner Sampson & Rothfuss, et al., 587 Fed. Appx. 249 (6th Cir. 2014) ……………………………………………………………….. 28

U.S. v. Burge, 711 F.3d 803 (7th Cir. 2013) ……………………………. 28

U.S. v. Grenier, 513 F.3d 632 (6th Cir. 2008) ………………………….. 3

**Cases** Page

United States v. Petroff-Kline, 557 F.3d 285 (6th Cir. 2009) …………. 7

United States v. Terrell, 345 Fed.Appx. 97 (6th Cir. 2009) …………… 3

Verhoff v. Time Warner Cable, Inc., 299 Fed.Appx. 488 (6th Cir. 2008) 3

Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323 (6th Cir. 2012) 14, 28

Wu v. T.W. Wang, Inc., 420 F.3d 641 (6th Cir. 2005) …………………. 25

**Statutes and Other Authorities**

15 U.S.C. §1692E(2)(a) ………………………………………………… Passim

FRCP Rule 6 ……………………………………………………………. 23, 24

FRCP Rule 8 ……………………………………………………………. 6, 12

FRCP Rule 15 ………………………………………………………….. 27

FRCP Rule 16 …………………………………………………………... 24, 25

Rule 30(b)(6) …………………………………………………………… 4

Rule 60 ………………………………………………………………….. Passim

Wright & Miller, Federal Practice and Procedure §1165 (2000) ……… 25

36.4814 Advances and Other Charges, 73 FR 6293 (2008) …………… 16

## PRELIMINARY STATEMENT

Appellant Eugene Kline submits this Reply Brief in further support of his appeal of the decision (i) granting summary judgment to Wells Fargo Bank, N.A. ("Wells Fargo"), Barclays Capital Real Estate d/b/a HomEq ("Barclays"), Mortgage Electronic Registration Systems ("MERS"), Reimer Lorber & Arnovitz ("Reimer") and Lerner Sampson & Rothfuss's ("Lerner"); (ii) striking the class certification allegations from Appellant's complaint; (iii) denying the motion for relief from judgment under Rule 60; and (iv) denying his motion to amend the complaint to add claims based on new evidence.

In his initial Brief, Appellant cited to substantial evidence in the record demonstrating that the Defendants below charged him thousands of dollars in improper legal fees and expenses in two mortgage foreclosure actions brought in Ohio state court in 2005 and 2007. Mr. Kline also demonstrated that, during the litigation of the claims below, Wells Fargo, Barclays and MERS (hereinafter the "Corporate Defendants") repeatedly engaged in litigation conduct which this court has found to be palpably improper, including: (i) failing to produce critical documents during discovery; (ii) repeatedly filing and relying upon a misleading Escrow History concealing an overpayment ; and (iii) falsely representing that that overpayment consisted of accrued interest that Mr. Kline owed.

In their papers, the Appellees raise nothing which undercuts these claims. Instead, ignoring their own repeated violation of procedural rules, the Appellees rely on purported admissions and other technical arguments in an attempt to convince this court to disregard the probative objective evidence in the record pointing to Appellees' liability and misconduct.

**ARGUMENT**

**POINT I**

**APPELLANT PROPERLY PRESERVED THE ISSUES PRESENTED IN ITS APPELLATE BRIEF**

As an initial matter, the Appellants argue that, since the Notice of Appeal does not expressly refer to the denial of the Rule 60 motion, this Court has no jurisdiction to "review[] the District Court's ruling on that Motion." (Brief of Appellees' Barclays, Wells Fargo and MERS" (hereinafter "Corp. Def. Br."), pp. 1-2) However, as this Court has repeatedly held, "a notice of appeal that names only a post-judgment decision may extend" to other decisions "if it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal" that decision, and "it also appears that the appellee has not been misled." Harris v. U.S., 170 F.3d 607, 608 (6th Cir. 1999). Moreover, while language in some earlier opinions from this Court "suggest[ed] that the underlying basis for an appeal must be apparent from the notice of appeal", this Court has recognized that it can rel[y] upon briefs and other subsequent filings to infer the intent of the appellant" in the

Notice of Appeal.  U.S. v. Grenier, 513 F.3d 632, 635 (6th Cir. 2008)  In Greiner, for instance, this Court found that, notwithstanding the failure of the Notice of Appeal to refer to the underlying judgment, those issues were properly preserved for review because they were challenged in Appellant's Brief on appeal:

> In this case, we may review issues relating to the district court's grant of Defendants' motion to dismiss because the [Appellant's] brief put Defendants on notice that the appeal regarded not only the order denying reconsideration but also the order granting Defendants' motion to dismiss.

(Id.)  Following Greiner, this Court has regularly rejected challenges based on an allegedly insufficient Notice of Appeal where the subsequent briefs or other appellate documents plainly put the Appellees on notice as to what was being appealed.  United States v. Terrell, 345 Fed.Appx. 97 (6th Cir. 2009) (unpublished) (following Greiner, court rejected challenge based on inadequate Notice of Appeal where Appellants "brief clearly indicates that he is appealing the June 24 order"); Verhoff v. Time Warner Cable, Inc., 299 Fed.Appx. 488 (6th Cir. 2008) (finding that court may review issues not referred to in the Notice of Appeal where the Appellant's "brief put [Appellee] on notice that its appeal encompassed these other claims.")

        In this case, not only did Appellant's initial brief put the Appellees on notice that Mr. Kline was appealing the denial of his Rule 60 Motion, but his Civil Appeal Statement filed in this Court on September 1, 2016 also explicitly advised the

Appellants that he was challenging the denial of that motion. See Civil Appeal Statement, Doc.#13, pp. 2-3, #4 ("Did the lower court commit reversible error in failing to grant Appellants Rule 60 motion based on fraud, misrepresentation or misconduct, or in failing to hold a hearing on the issues raised by the motion, where….")

## POINT II

## THE COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT

### A. It Was Error To Dismiss The Claims Arising From The Collection Of Post-Acceleration Late Fees On The First Mortgage

Appellant's FDCPA claim against the Reimer firm, his breach of contract claims against Wells Fargo and MERS, and his OSCPA claim against MERS are each based in part on Appellees' collection of a late fee after acceleration.

As he did below, Mr. Kline's initial brief demonstrated that – contrary to their representations to the Appellant and the court – the Appellees surreptitiously charged him for a post-acceleration late fee after he paid off his loan. (Kline Br., pp 35-42) Despite this, the Corporate Defendants and Reimer continue to argue "that the only late charges assessed were all accrued before the loan was accelerated." (Corp. Def. Br., p. 44) However, this is flatly contradicted by Appellees' own witnesses. Thus, looking at Appellees' internal documents, HomEq's Rule 30(b)(6) witness Michael Perry admitted that Kline was improperly charged for at least one post-acceleration late fee in November 2007:

> Q. … [H]e was charged at least one post-acceleration late fee, is that -- is that correct?
> MR. RILEY: I'm going to object.
> THE WITNESS: I don't know, sir. It depends on the definition of charge. He was presented with an invoice. He paid it and then they realized an error and they corrected it.

(R.465-3, PageID#7971)

Indeed, given this testimony, the only real issue is whether the Appellees issued a refund check to Mr. Kline for the improper assessment of the post-acceleration late fee. While Mr. Perry said that Appellant "would have received an escrow check" for $69.12 from Appellees, no such check or other evidence of payment was ever produced, and Perry testified that "I don't know how the money was returned to him." (R.465-3, PageID#7969, PAGEID#7971) Without any actual evidence of payment, summary judgment was improper. See Lopez v. Citizens Auto Fin., 2009 Ohio 1082, ¶13 (8th DCA 2009) (finding "a debtor's affidavit that claimed that the debtor had made [certain] payments" is "self-serving [where] the debtor failed to attach any evidence of payment.")

In any event, payment is an affirmative defense under both federal and Ohio law, and none of the Appellees ever pled "payment" or even raised the issue until Barclays deposition in February 2015. Desjardins v. Desjardins, 311 F.2d 111, 116 (6th Cir. 1962); Capital One Bank (USA), N.A. v. Reese, 2015-Ohio-4023 (11th DCA 2015) ("payment is an affirmative defense which is waived if not pleaded") The Appellees cite no support for their novel argument that the affirmative defense of

payment set forth in Rule 8 of the FRCP is limited to "an action to collect a debt", and Appellant is unaware of any such decision. (Corp. Def. Br., p. 30)

Moreover, even if the Appellees had not waived the defense of payment, and had produced evidence demonstrating that they refunded this improperly-charged amount to Appellant, that would still not have absolved the Reimer firm from liability under the FDCPA. The FDCPA "imposes strict liability for violations. Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 438 (6th Cir. 2008), Section 1692f(1) of the FDCPA prohibits "the collection" of any improper amounts, and the violation is complete upon "collection." Since the FDCPA is a strict liability statute, it "is of no consequence" whether Reimer was aware of its improper conduct. Galati v. Manley Deas Kochalski, LLC, 622 Fed. Appx 473, 476 (6th Cir. 2015)

In opposition to this evidence and controlling case-law, Appellees can cite to only one thing: Appellant's failure to timely respond to a Request for Admission stating that he had "no affirmative evidence" that Appellees assessed post-acceleration late charges.[1] (Corp. Def. Br., pp. 26-27) The Corporate Defendants also cite the court's finding that Kline purportedly never sought to amend or withdraw the admissions resulting from the untimely responses until summary judgment had been granted.

[1] Appellant responded to the Request on February 15, 2015, after it was due.

However, no motion need be made to withdraw an admission, nor is there any "talismanic significance" to the phrase "I move." Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997) "A withdrawal may be imputed from a party's actions, including the filing of a belated denial." United States v. Petroff-Kline, 557 F.3d 285, 293-94 (6th Cir. 2009) Here, Appellant's belated denial clearly put the issue in question, and the subsequent testimony of Barclay's witness demonstrated what the Appellees had previously concealed – that they had improperly charged and collected a post-acceleration late fee from Mr. Kline. Appellees have not cited to a single case where a court credited a purported admission based on an untimely response where "the record demonstrates that the 'admitted' facts are contrary to the actual facts." FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994), much less where the Defendants themselves concealed the true facts and made false representations to its opponent and the court. *See generally* Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis 27089 (6th Cir. 2001) (unpublished) ("[A party] cannot hide relevant, harmful evidence in violation of the rules of discovery and then claim unfair surprise when the damning evidence is uncovered late in the proceedings.")

**B. It Was Error To Grant Summary Judgment On The Claims Arising From The Post-Payoff Collection Of Reimer's Attorneys' Fees And/Or Legal Expenses**

Appellant's FDCPA claim against the Reimer firm, his breach of contract claims against Wells Fargo and MERS, and his OSCPA claim against MERS are

also based in part on their surreptitious collection of purported legal fees and expenses by using excess payments owed to him after his loan had been fully paid off. As Appellant demonstrated, these post-payoff transactions had not only been concealed from Appellant until after discovery was closed in March 2015, but the Corporate Defendants and Reimer also repeatedly represented in court filings that Appellant was never charged attorneys' fees at the time the first mortgage was paid off in November 2007.

In response to Appellant's detailed analysis of the Corporate Defendants own records showing the interest overcharge to Appellant and the use of that amount to pay purported post-payoff legal fees and expenses never disclosed to Mr. Kline, the Corporate Defendants admit that "the Reimer Lorber fees may have been reimbursed in part … by the post-payoff reallocation." (Corp. Def. Br., p. 30)

Nevertheless, the Corporate Defendants argue that Appellant "ambushed the Appellees" by challenging the assertion in the Reply Affidavit of Jacklyn Cartmill filed on October 30, 2015 that the amounts used by the Appellants to pay legal fees and expenses after payoff came from "accrued interest" owed by Kline. (Id. at 33) However, the record demonstrates that it was Appellant who was ambushed – *first*, by the Corporate Defendants' concealment of the $482.08 escrow balance until March 2015, and *then*, by the Cartmill Affidavit's false representation that the concealed legal fees and expenses paid from Kline's escrow balance came from past-due interest.

Appellees also contend that Kline "points to no evidence in the record to actually rebut the Cartmill Affidavit." However, Appellant stands by the detailed analysis of the Corporate Defendants' records in his initial Brief, which the Cartmill Affidavit did not even refer to in making the conclusory assertion that the $482.08 balance in the Escrow Account consisted of "past-due interest." In a battle between a bald conclusion made by an interested affiant and objective "evidence in the record to contradict it", the "self-serving affidavit carries little weight." Hofner v. Bradshaw, 622 F. 488, 500 (6th Cir. 2010) Indeed, the Cartmill Affidavit contradicted her own prior deposition testimony in June 2015, when she testified that she did not know whether the Appellees' prior representation that none "of the Reimer firm's attorney fees [were] passed on to Mr. Kline" was accurate. (Doc.#497, PAGEID#9055-9056)[2] *See* Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (a party cannot create an issue of fact "by filing a later affidavit which flatly contradicts that party's earlier sworn deposition without explaining the contradiction or attempting to resolve the disparity")

The Corporate Defendants also claim that summary judgment was proper because Kline "does not identify how the amounts of the two reimbursement checks he received following the payoff were determined, or whether any interest was

[2] Cartmill's claim that the escrow balance consisted entirely of accrued interest also flatly contradicts the Corporate Defendants' assertion that the post-acceleration late fee which was charged to Kline, and later purportedly reversed and refunded was ever paid. (*See* R.465-15, PageID#8017, at 12/2007 and 12/5/07)

included." (Corp. Def. Br., p. 33) However, for a variety of reasons, this is a complete red-herring:

(i) the Corporate Defendants never mentioned either of these checks until October 30, 2015, much less pleaded the affirmative defense of payment;

(ii) the Corporate Defendants themselves admit that the check for $422.32 related to "the second lien mortgage" (Corp. Def. Br., p. 6, fn 2); and

(iii) as the proponents of summary judgment, it was the Appellants – not Mr. Kline -- who had the burden to present evidence demonstrating that any interest overcharges were refunded.

As a logical matter, the Appellants are the only parties who can explain what the payments made to them by Mr. Kline were applied to, how any purported refunds to Mr. Kline were calculated, "or whether interest was included." (Corp. Def. Br., p. 33) It is simply astounding that – nine years after Mr. Kline paid off the loan – reputable banking institutions like Barclays and Wells Fargo still cannot (or refuse to) explain the debits and credits in Appellant's loan account.

The Corporate Defendants also argue that Appellant "fails to take into account whether any additional expenses were accrued after the payoff letter was sent." (Corp. Def. Br., p. 33) In addition to what was said above, there are two other fundamental problems with this argument. <u>First,</u> charging Mr. Kline and other borrowers for undisclosed "additional expenses [which] accrued after the payoff letter was sent" constitutes a blatant violation of the FDCPA, which prohibits "the false representation of the character, amount or legal status of any debt." 15 U.S.C.

§1692E(2)(a). Second, Appellees' own deposition witness admitted that charging a borrower for fees and expenses which were never disclosed in a payoff letter would be patently improper. As Barclays' witness Matthew Perry testified in discussing Mr. Kline's account:

> [H]e would never ha[ve] paid more than he was quoted. Anything – if there were post-fees like that that one of the attorney firms came to us for, we would have to eat that as a loss.

(Rule 60 Motion, R.497,PageID#9030) Yet again, the Corporate Defendants appear to be talking out of both sides of their mouths.

### C. It Was Error To Grant Summary Judgment On The Claims Arising From The Legal Fees And Expenses Collected On The Second Mortgage

Appellant's FDCPA claim against the Lerner firm, his breach of contract claims against Wells Fargo, and his breach of contract and OCSPA claims against MERS rest in part on the collection of purported legal fees and expenses from him when he paid off his second mortgage in November 2007.

#### 1. The Collection of Lerner Sampson's Legal Fees And Expenses

It is undisputed that the Corporate Defendants and Lerner Sampson demanded and collected $350 in attorneys' fees from Appellant to pay off the second mortgage. However, they claim that the collection of these improper charges was not actionable because "the unrebutted sworn Affidavit of Jacklyn Cartmill reveals that this $350

amount was included in a reimbursement check which was mailed to Kline on or about December 21, 2007." (Corp. Def. Br., p. 29)

The Corporate Defendants admit that they never raised this purported payment before filing Cartmill's Affidavit with the court on October 30, 2015, much less pleading payment as an affirmative defense.   Their argument that that they did not have to plead "payment" because "this is not an action to collect a debt" is completely unsupported by either the plain language of Rule 8 or case law.  (Corp. Def. Br., p. 30)

In its brief, the Lerner firm represents that it "raised the affirmative defense of payment" in its Amended Answer when it asserted that "Plaintiffs' claims against LSR are barred under the doctrine of voluntary payment."  (Lerner Sampson Br., p. 33)   This argument is absurd.   As a federal district court in Pennsylvania recently stated:

> The voluntary payment doctrine is separate from the affirmative defense of "payment" which is specifically listed in rule 8(c).   As defendant contends, a "payment' affirmative defense is an assertion that the *defendant* has already paid the amount that the plaintiff claims that the defendant owes.

Parsons v. City of Philadelphia, 2014 U.S. Lexis 170934, fn. 2 (E.D. Pa. 2014) (emphasis in original)   In contrast to the affirmative defense of "payment", the "voluntary payment" defense focuses on payment by the *Plaintiff*.  Scott v. Fairbanks Cap. Corp. , 284 F.Supp.2d 880, 894 (S.D. Ohio 2003) (under the

voluntary payment doctrine, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution.")[3]

The Lerner firm also argues that – even if the legal fees were not refunded – their collection did not violate the FDCPA because, while Ohio law generally prohibits the assessment of legal fees in a foreclosure action, it does not prevent a second mortgage holder from collecting legal fees in a foreclosure brought by the holder of the first mortgage. (Lerner Br., pp. 44-45) Lerner argues that it was entitled to recover legal fees under the following provision of the second mortgage:

> If any action or proceeding is commenced with *materially* affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including *reasonable* attorneys' fees, and take such actions *as is necessary* to protect Lender's interest.

(R.311-2, PageID#4618) Lerner cites no case which supports the theory that this provision is somehow excluded from Ohio's general prohibition against charging attorneys' fees incurred in foreclosure where the borrower pays off the loan.

In any event, the court need not reach that issue to find that the Lerner firm's conduct violated the FDCPA. As Mr. Kline demonstrated -- and the Corporate

[3] Even if the district court could have properly considered this never-pled defense, Appellant demonstrated that there are numerous reasons to doubt the conclusory assertion in the Cartmill Affidavit that – eight years after payoff of the second mortgage – she somehow belatedly "discovered that a reimbursement check" for $422.32 which included the improper legal fees had been refunded to Kline in December 2007. (See Appellant's Br., p. 48) The Corporate Defendants fail to even refer, much less address, these logical flaws in their argument.

Defendants do not dispute -- while the first and second mortgage holders in the 2007 Ohio foreclosure action repeatedly represented that they were two separate entities, they were in fact owned by the same Trust, with Wells Fargo as Trustee. (Kline Br., pp. 4-6) Under cover of this subterfuge, the holder of the second mortgage (who was falsely represented as "MERS, as nominee for WMC") charged Kline $350.00 in attorneys' fees and $225.00 in outsourcing fees associated with the foreclosure lawsuit brought against it by itself. (Id. at 48-50) Moreover, Wells Fargo and Reimer also charged Mr. Kline $100.00 in service of process fees on the first mortgage for serving *itself*. *See* Doc. 3465-13, PageID#8011 ($100.00 charge for serving MERS)[4]

In Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323, 327 (6th Cir. 2012), this court held that "that a clearly false representation of the creditor's name may constitute a false representation... to collect or attempt to collect any debt under Section 1692e." In falsely representing that MERS was the creditor on the second mortgage in the payoff letters sent to Kline in November 2007 (Doc. #465-11, PageID#8002), and a follow-up letter describing the fees and expenses in February 2008 (Opp. to S.J., R.465-14, PageID#8013), Lerner misrepresented the creditor in clear violation of the FDCPA. Lerner's argument that it said that MERS was the

---

[4] The evidence showing that Appellees charged legal fees and expenses associated with suing themselves in this case was the subject of a September 1, 2012 article on the front page of the Business Section of The New York Times.

creditor because "the mortgagee of record for the second mortgage was MERS", which was "a different entity from Wells Fargo Bank, N.A. as Trustee, the foreclosure plaintiff" in no way immunizes it from liability. (Lerner Br., p. 37) Galati, 622 Fed. Appx 473 (6th Cir. 2015) (it is "is of no consequence" whether debt collector was aware of its improper conduct to find FDCPA violation)

Lerner also argues that the legal fees charged to Appellant for the defense of the lawsuit brought by the Wells Fargo Trust against itself were appropriate because "a lienholder must file an answer in a foreclosure to protect its lien." (Lerner Br., p. 37) However, there was no need for the Wells Fargo Trust to sue itself, because it was the owner and holder of both mortgages. All the Corporate Defendants and Lerner had to do was plead the Wells Fargo Trusts' ownership of both liens in its foreclosure complaint in order to fully protect the second lien.

Had Appellees done so rather than repeatedly misrepresenting the identity of the second mortgage holder, then Appellant could not have been charged legal fees and expenses associated with the Wells Fargo Trust suing itself, and the charges for the defense of that lawsuit. Appellees have failed to identify a single case in which a party was entitled to recover attorneys' fees or expenses associated with bringing a lawsuit against itself, or defending against such a suit. Nor do Appellees even refer to the unbroken line of case law in Ohio and every other U.S. jurisdiction holding that "it is axiomatic that a party cannot sue itself." Conti Corp. v. Ohio Dept. of Admin. Services, 90 Ohio App.3d 462, 466 (10th App. Dist. 1993); Romanoff Elec.

Corp. v. Ohio Dept. of Admin. Services, 1994 Ohio App. Lexis 2835, *5 (10th App. Dist. 1994) (same); In re Transcolor Corp., 296 B.R. 343, 363 (Bank. D. Md. 2003) ("it would seem rather obvious that a corporation cannot sue itself"); Bossen Architectural Millwork, Inc. v. Kobolak & Sons, Inc., 2015 U. S. Distirct Lexis 15552, *8 (D.N.J. 2015) (same)

Thus, at a minimum, there is clearly a question of fact as to whether the lawsuit brought by first mortgage holder Wells Fargo against second mortgage holder Wells Fargo "materially affected" the second mortgage holders interest in the property within the meaning of the language used in the second mortgage contract, or whether paying such fees and expenses was "necessary to protect" that interest, or whether attorneys' fees associated with suing oneself can ever be "reasonable."

**2. The Fees Paid to 3 Arch Trustee**

Appellant was also charged an additional $225.00 on the second loan for services purportedly performed by 3 Arch Trustee Services which were described in letters sent by Appellees as outsourcing and referral-type services. (See Kline Br., 50, *quoting* Doc. #465-14, Page ID#8014). As Appellant demonstrated in its initial brief, charging outsourcing or referral fees is absolutely prohibited under the Fannie Mae Guidelines, which the Corporate Defendants admitted they followed. (Kline Br., p. 51) Lerner's contention that it might have followed the Freddie Mac Guidelines in this instance is immaterial, since Freddie Mac also prohibited entities

from charging outsourcing and referral-type fees. See 36.4814, Advances and Other Charges, 73 FR 6293, 6296 (2008) (VA adopts rule prohibiting the assessment of outsourcing fees "consistent with the position taken by Freddie Mac, which prohibits payment for referral fees, packaging or other similar fees and new case startup fees in its Single Family Seller/Servicing Guide")

The Appellees also rely on testimony from Barclays' corporate designee which contradicted their prior representations as to what 3 Arch was paid to do, claiming that 3 Arch monitored the equity in the second mortgage "so that the servicer could decide whether or not to bid on the property at a foreclosure sale." (Corp. Def. Br., p. 44 fn 21) Yet summary judgment is required to be denied where there is conflicting evidence on a material issue.

Moreover, even if the court was permitted to credit Appellees' new testimony as to the nature of 3 Arch's services, that would not have made them compensable. Appellees offer no explanation for why the second mortgage holder would need to spend money to determine whether to bid on the property at a foreclosure sale when the first mortgage holder also owns the second mortgage.

## POINT III

## THE COURT COMMITTED ERROR IN FAILING TO GRANT KLINE'S MOTION UNDER RULE 60

In his initial papers, Appellant detailed multiple reasons why the court erred in failing to grant Appellants motion under Rule 60, including (i) the Corporate

Defendants' failure to produce critical evidence until after the discovery deadline, and after falsely representing that they had no such documents in response to document demands; (ii) repeatedly filing and relying upon the inaccurate and incomplete Escrow History; (iii) falsely representing that Appellant was not charged for any of Reimer's attorneys' fees, or for any expenses which purportedly accrued after he paid off his loan; and (iii) falsely representing that the previously concealed escrow balance consisted of accrued interest owed by Mr. Kline.

**A. The Misconduct In Discovery**

In response to Appellants' demonstration of the Corporate Defendants' misconduct in discovery, Barclays blames its failure to produce the accurate Escrow History and other critical loan documents until March 2015 on the fact that (i) it sold the servicing business in 2010, and (ii) the documents were "in a file that was not labeled in a manner which would have revealed that its contents might be germane to this case." (Corp. Def. Br., p. 13) Without even considering Barclays complete failure to support this contention with any record evidence, this excuse for its belated production of an accurate Escrow History is illogical. The transactions resulting in the escrow balance concealed in the originally-produced Escrow History produced took place in November and December 2007, when Barclays' servicing business was still in full operation. Despite this, when Mr. Kline requested an itemization of the amounts collected from him on the first mortgage in late 2007, Barclays, Wells Fargo and Reimer responded with an itemization dated February 7, 2008 which

attached the inaccurate Escrow History.  (Doc. #465-13, PageID#8006, PageID#8007)

Moreover, this case was filed by Appellant in November 2008, well before Barclays sold its servicing business.  Though it should have imposed a litigation hold and segregated these documents at that point, it apparently did not.  As the lower court said in rejecting a similar argument made by Barclays in opposition to the motion to compel:

> Barclays was in possession of this database at the commencement of this litigation because it owned HomEq at the time Plaintiffs filed this lawsuit. One and a half years after the Complaint was filed, Barclays sold HomEq, divesting itself of possession of the loan database that it needed to cooperate in discovery. The Court cannot conclude that this is an acceptable reason for objecting to a party's interrogatory on the basis that the interrogatory imposes an undue burden, because the burden was entirely of Barclays' own making. …[T]he sale of HomEq took place long after this litigation had already commenced, when Barclays was fully on notice of the claims against it, and presumably aware of what documents and information in its possession might be required to comply with discovery requests.

Kline v. MERS, 2014 U. S. 141027, *40-41 (S.D. Ohio October 1, 2014)   As this Court found in Jordan v. Paccar, 1996 U.S. App. Lexis 25358 (6th Cir. 1996), a "reckless approach to searching one's files for discoverable material" qualifies as misconduct under Rule 60.

Moreover, the Corporate Defendants completely ignore the fact that they produced additional documents after the June 2015 depositions, including

documents produced on June 26, 2015 by Wells Fargo demonstrating that – contrary to the representations made by MERS and Reimer in the 2005 Ohio foreclosure action against Kline -- MERS was not the owner and holder of the first mortgage at the time they instituted that action. (Kline Br., pp. 53-54)

Finally, MERS makes no attempt to justify the lower court's inexplicable refusal to require MERS to produce a privilege log to identify the documents it was withholding on the basis of privilege. See Fed.R.Civ.P. 26(b)(5) (requiring party which withholds documents by claiming privileged to "describe the nature of the documents . . . not produced . . . in a manner that . . . will enable other parties to assess the claim")

**B. Relying Upon The Inaccurate Escrow History**

The Corporate Defendants provide no explanation for repeatedly filing and relying upon an inaccurate Escrow History during the first six and a half years of this case. Indeed, as Mr. Kline demonstrated, even after Barclays finally provided Appellees' counsel with the accurate Escrow History in March 2015, the Corporate Defendants and their counsel still filed and relied upon the prior inaccurate Escrow History in their summary judgment papers. (Kline Br., p. 62) *See* Paccar, 1996 U.S. App. Lexis 25358, at *6 ("fraud" for purposes of Rule 60 includes "deliberate omissions when . . . the non-moving party has volunteered information that would be misleading without the omitted material"); Garcia v. Berkshire Life Ins. Co., 569 F.3d 1174, 1182 (10th Cir. 2009) ("the affirmative submission of false evidence is . .

akin to a fraud on the court.")

The Corporate Defendants argue that "even if Appellees had appended the second Escrow History instead of the first one to the Motions for Summary Judgment, none of the arguments in favor of summary judgment would have changed." (Corp. Deft. Br., p. 64, fn 26) As shown by the Corporate Defendants evolving explanations for why their conduct was proper[5], this is demonstrably false. In any event, whether the misleading evidence was material is beside the point. As the Ninth Circuit has stated:

> the inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process

In re Intermagnetics America, 926 F.2d 912, 917 (9th Cir. 1991)

**C. False Representations About Attorneys' Fees And Interest**

The Corporate Defendants continue to argue that their repeated representations that Appellant was not charged for any of Reimer's attorneys' fees were accurate, and that "any post-payoff reallocation" of the money "collected from

---

[5] Thus, the Corporate Defendants first claimed that none of Reimer's attorney's fees were passed on to Kline. After the post-payoff disbursements from the concealed escrow balance were finally revealed in March 2015 – they then claimed that the escrow balance came from properly-charged interest. Then, in response to the Rule 60 motion, the Corporate defendants claimed that – even if interest was overcharged -- they had the right to assess additional, undisclosed charges after payoff. (Rule 60 Opp., R.506, PageID#9171)

Kline that might have been applied toward those fees does not in any way support the claim that Kline was actually charged for those fees." (Corp. Def. Br., p. 61) Given the testimony of Barclays' own witness after reviewing the Corporate Defendants' internal documents, the recklessness of this statement is astonishing:

> Q. Now, in his affidavit here, Mr. Reimer says . . . "Nor were any of the Reimer firm's attorneys' fees passed on to Mr. Kline with respect to the payoff of the first mortgage on his property." Now, in particular, nor were any of the Reimer firm's attorneys' fees passed on to the -- Mr. Kline. Do you know whether that's an accurate statement?
> A. I do not.

(R.497,PageID# 9055-9056)

With regard to the claim that the Cartmill Affidavit falsely represented that the escrow balance consisted of accrued interest owed by Appellant, the Corporate Defendants argue that that allegation is based on "pure speculation . . . rather than evidence." (Corp. Deft. Br., p. 62) However, the Corporate Defendants do not refer to a single one of their own internal accounting documents to support Cartmill's conclusory statement, much less undercut any of the detailed analysis which shows Cartmill's representation about accrued interest to be utterly false.

The Corporate Defendants also argue that their representation that no attorneys' fees were ever assessed to Kline and the representation that the escrow balance was comprised of "past-due interest" were "nothing more than the legal positions taken by the Appellees." (Corp. Defts' Br. p. 64)  The Corporate Defendants provide no further explanation, much less case law, to support this novel

theory. Clearly, the representation that the escrow balance came from past-due interest and that attorneys' fees were never assessed or collected from Plaintiff are "susceptible of being proved true or false." *Cf.* Milkovich v. Lorain Journal, 497 U.S. 1, 21 (1990) (finding that something is "sufficiently factual" for purposes of defamation when it is "susceptible of being proved true or false.")

**POINT IV**

**IT WAS ERROR TO STRIKE THE CLASS ALLEGATIONS FROM THE COMPLAINT**

In their papers, the Appellees claim that the lower court properly struck the class allegations from the complaint because of Appellant's purported failure to file the class certification motion or seek an extension of the deadline.

In its initial papers, Appellant demonstrated that -- well before the deadline to file a motion requesting class certification -- he repeatedly filed letters and motion papers with the lower court advising it of the Corporate Defendants' belated disclosure of critical documents after the discovery deadline, and requesting that it reset the filing deadlines in the existing Scheduling Order in light of the mutually-agreed need for additional depositions. (See Kline Br., pp. 14-15, 19) The Appellees' contention that the court could simply disregard these repeated requests because they were purportedly made in "informal letters" rather than a motion is in direct conflict with FRCP Rule 6(b), which expressly allows parties to make "requests" for an extension of a deadline before it passes "with or without a motion"

or even notice. (FRCP Rule 6(b)(1)(A)) *See* Lujan v. National Wildlife Federation, 497 U.S. 871 (1989) Appellees' argument also ignores the fact that – in addition to the docketed letters – Kline made his requests in motion papers filed with the court on May 29th, June 29th and August 14, 2015. ((Doc. #427, Page ID#6800-6801; Doc. #431, PageID#6931; Doc.#445, PageID#7330-7331)

In fact, on June 1, 2015 – eight days before the June 9th class motion deadline calculated by the court in its subsequent decision striking the class claims -- the court filed an order noticing a conference for June 22, 2015 in response to Appellant's requests. (See docket) The court later adjourned that conference to Jully 22nd, and then cancelled the conference on that date, saying it was not necessary.

In sum, the court committed a clear error of law in disregarding Appellant's repeated requests for an extension of the Scheduling Order deadlines in light of the Corporate Defendants' belated document production, which even the Corporate Defendants acknowledged was necessary. (Opp. to S.J., R.432-3, PageID#6944) "`[A]n application under Rule 6(b)(1) normally will be granted in the absence of bad faith or prejudice to the adverse party.'" Koehler v. Dodwell, 2000 WL 709578, *3 (4th Cir. 2000) (unpublished) (quoting Wright & Miller, Federal Practice and Procedure § 1165 (2000). Even under the more rigorous and inapplicable Rule 16 good cause standard, the fact that Appellees' late disclosures and the resulting June 2015 depositions uncovered critical evidence demonstrates

that Mr. Kline was completely justified in requesting an extension of the existing scheduling deadlines. Nosker v. Gill Bros., 2007 U.S. Dist. Lexis 11885, *7-8 (W.D. Mo. 2007) (finding good cause for extension of deadline to amend the complaint under Rule 16 where defendants did not produce documents until after deadline; defendants' refusal to provide timely discovery "cannot be used against the plaintiffs")

Finally, as Appellant demonstrated, even if it was Mr. Kline rather than Appellees who were dilatory, that would not have justified striking the class allegations. Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir. 2005) As this court has repeatedly found, a party's failure to file a document in accordance with a court order is not sufficiently "egregious" to justify dismissal of a claim, Carpenter v. City of Flint, 723 F.3d 700, 705 (6th Cir. 2013), especially where a court fails to take into account that the defendants themselves "also engaged in dilatory conduct." Freeland v. Amigo, 103 F.3d 1271,1278 (6th Cir. 1997); Mulbah, 261 F.3d at 592 (reversing dismissal of claims under Rule 41 where "defendants were equally dilatory in this case").

## POINT V

## IT WAS ERROR TO DENY APPELLANT'S MOTION TO AMEND THE COMPLAINT

Finally, the Appellees argue that the court properly denied Kline's two motions for leave to amend the complaint on February 3rd and December 21, 2015.

The Corporate Defendants acknowledge that (i) they did not "complete" the document phase of discovery and supply "final and complete Interrogatory responses" until January 2015, after the grant of the motion to compel and years after that disclosure was due; (Corp. Def. Br., p. 12); (ii) depositions did not commence until February 2015; (iii) they produced additional documents responsive to Appellant's disclosure requests after the discovery deadline in March 2015, necessitating another round of depositions in June 2015; and (iv) they again produced additional documents in late June after those depositions.

Given the above, no rational assessment of the record permitted a determination that the Appellant engaged in undue delay in not seeking to amend the Complaint until February 2015, and seeking to amend again in December 2015 to assert the new facts concealed by Appellees during discovery. The Appellees' claim that the proposed Amended Complaint filed in December 2015 alleged facts which were available to Kline in 2008 is unsupported by a single citation to the record. As even a summary review of the December 2015 Complaint demonstrates, the new allegations detail the facts concealed from Appellant until the close of discovery, as well as the date of each misrepresentation revealed by the concealed evidence after discovery had concluded. (*See, e.g.*, Doc.#491, PageID#8745- #8776, ¶¶130-222)

Under these circumstances, the Corporate Defendants' attempt to claim prejudice is astonishing. As this Court held in <u>Hayes v. Norfolk So. Corp.</u>, 2001 U.S. App. Lexis 27089 (6th Cir. 2001) (unpublished):

> [A party] cannot hide relevant, harmful evidence in violation of the rules of discovery and then claim unfair surprise when the damning evidence is uncovered late in the proceedings.

Id. at *17. Appellees simply ignore the Hayes opinion, as well as this Court's opinion in Johnson v. Ventra Group, Inc., 1997 U.S. App. Lexis 21714, *8 (6th Cir. 1997) (unpublished), where it said:

> when new information giving rise to specific allegations of fraud is allegedly obtained during discovery, the mandate or Rule 15(a) that leave to amend shall be 'freely given' must be adhered to in order to decide a case on the merits.

Finally, Appellees' attempt to provide an alternative basis for the court's holding that the proposed new claims were "futile" because they were based on evidence which had been "considered and rejected" by the court is unavailing. Like the district court, the Appellees cite to virtually no cases to support this conclusion, and ignore cases on point such as:

- Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323, 328 (6th Cir. 2012), where this Court found that claiming that an entity is the holder of a mortgage in a foreclosure action when it is not constitutes an actionable "false representation" under the FDCPA, and that if that entity "did not have standing to bring the foreclosure action in the first place, the materiality of the false statement of ownership would be patent."

- U.S. v. Burge, 711 F.3d 803 (7th Cir. 2013), where the Seventh Circuit found that a defendant engaged in obstruction of justice under §1512(c) – which is also a predicate act under RICO -- where the evidence showed that he lied in answering interrogatories in a civil proceeding.

Furthermore, Reimer's attempt to distinguish this Court's decision in Slorp v. Lerner Sampson & Rothfuss, et al., 587 Fed. Appx. 249 (6th Cir. 2014) because it was decided "under a Rule 12(b)(6) standard" is baseless, as that is the same standard used to determine whether a proposed amendment is futile. Kreipke v. Wayne State Univ., 807 F.3d 768, 782 (6th Cir. 2015) ("A proposed amendment is futile where it would not withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.")

Finally, Appellees' assertion that any claims arising from the allegedly false representations of MERS' standing in the 2005 foreclosure action would be barred by the statute of limitations ignores the fact that the Appellees concealed the true facts until June 26, 2015. Sims v. Ohio Cas. Ins. Co., 151 F.App'x 433, 435 (6th Cir. 2005) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation.")

## CONCLUSION

Appellant respectfully submits that the decision below should be reversed.

Dated: March 24, 2017

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      I certify that this brief complies with the type-volume limitation of

Fed.R.App.P.32(a)(7)(B) because:

This brief contains 6,969 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of

Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6)

because:

This brief has been prepared in proportionally spaced typeface using Microsoft Word 97-2003, in Times New Roman, font size 14.

New York, New York
Dated: March 24, 2017